[No. 43681.    En Banc.    August 19, 1976.]

MARIE HUNSLEY, *Appellant*, v. KENNETH GIARD, ET AL, *Respondents*.

*Critchlow, Williams, Ryals & Schuster,* by *Rembert Ryals,* for appellant.

*Loney, Westland, Raekes, Rettig & Sonderman,* by *Diehl R. Rettig,* for respondents.

BRACHTENBACH, J.—This case concerns the right to recover for injuries, physical and mental, resulting from the negligent infliction of mental distress. The injuries for which recovery is sought resulted from an invasion of plaintiff's home by the defendants' car, but without immediate physical impact to her and outside of her immediate presence. The trial court entered judgment upon a jury verdict for the defendants. We reverse and order a new trial.

On a March day, the plaintiff was sitting in her living room reading the evening paper when she heard a "rather explosive sound." Her husband was in an adjoining room giving a piano lesson to one of his private students. She rushed to the area of the sound and discovered her next-door neighbor, the defendant driver, sitting in her Lincoln Continental in the middle of plaintiff's back porch utility room. The room was a shambles. Two walls had been knocked down, the windows were shattered, and many of the items stored in the room were damaged. When plaintiff stepped into the room the floor collapsed, causing her to bruise her legs.

Plaintiff's immediate reaction was concern for her long-time neighbor, the defendant driver. In her words, "I was quite worried about her because she had had some physical problems. I didn't know whether she had blacked out or had died at the wheel or something had happened to her."

The plaintiff said she was dismayed very much by the damage to the room and its contents. Shortly thereafter she thought about the tragedy which might have occurred had the car hit the room where her husband was giving a piano lesson.

Within an hour after the incident the plaintiff began to experience physical discomfort. "I began to feel this very

strange feeling as if my chest were going to explode and as if there wasn't room in my chest for everything. Even my breasts felt very heavy and my arm was beginning to be numb and the numbness eventually went into my hand— my left arm and hand." Some years earlier plaintiff had had one lung and certain ribs removed in the aftermath of tuberculosis. She was concerned that she might have snapped what she described as the frail cartilage in the rib section. She felt fatigue for some days.

After experiencing continued pain and increased numbness in her arm, plaintiff called a physician who prescribed bed rest and heat. A week later two electrocardiograms were taken. The doctor who administered these tests did not testify at the trial. Five weeks later she consulted a cardiologist. The electrocardiogram revealed abnormalities which the cardiologist said could be related to a number of different stressful conditions, but he concluded that the heart damage "was probably related to the severe stress state overloading the heart" which occurred at the time of the incident. It was his diagnosis that plaintiff had suffered heart stress, as opposed to a heart attack, with probable microscopic scarring of the heart muscle. Subsequent electrocardiograms were normal, which the doctor testified to be not at all unusual.

The trial court denied defendants' motion to dismiss and sent the case to the jury. The following instruction was given on the question of liability.

If you find that the sole proximate cause of the stress which the plaintiff claims to have sustained was her fear for the safety of Mrs. Giard and/or her fear for the safety of her husband and/or the damage to her home, then your verdict shall be for the defendants.

However, if you find that a proximate cause of this stress was the noise the plaintiff heard and/or the scene which confronted her when she observed the defendant's car after it collided with her home and/or from the fall the plaintiff sustained and the bruises, if any, resulting therefrom and if you further find that this stress proxi-

mately caused injury to the plaintiff, then your verdict shall be for the plaintiff.

The jury returned a verdict for defendants.

Out of fairness to the late Judge Lawless, the trial court judge, we should acknowledge that the record reflects his complete awareness of the somewhat confused state of the law. He submitted the case to the jury on the theory that the injury when the floor gave way was adequate physical impact, seemingly required by case law.

Liability for negligently causing fright, mental disturbance, shock, or emotional distress, resulting in physical injury, without impact to the person, has been a divided, confused, and unsettled area of the law. No general agreement has yet been reached on the various issues involved. W. Prosser, *Handbook of the Law of Torts* § 54, at 327 (4th ed. 1971). Any attempt at a consistent exegesis of the authorities is likely to break down in embarrassed perplexity. *Right to recover for emotional disturbance or its physical consequences, in the absence of impact or other actionable wrong*, Annot., 64 A.L.R.2d 100, 103 (1959).

The following rules have evolved, nevertheless, as the courts have attempted to come to grips with the problem of defining the boundaries of liability for mental distress injuries.

1. A contemporaneous physical impact was required by the leading English case and a majority of the early American cases before allowing recovery for mental distress. J. Fleming, *Law of Torts* 149 (4th ed. 1971); *see, e.g., Spade v. Lynn & Boston R.R.*, 168 Mass. 285, 47 N.E. 88 (1897).

2. Some jurisdictions followed the impact rule, but strained to find impact, such as our own case finding impact through a shock wave from an explosion. *See, e.g., Kasey v. Suburban Gas Heat of Kennewick, Inc.*, 60 Wn.2d 468, 374 P.2d 549 (1962); *Zelinsky v. Chimics*, 196 Pa. Super. 312, 175 A.2d 351 (1961).

3. Intentional or willful acts, even those involving no physical impact and leading only to mental stress, usually

resulted in a cause of action. *See, e.g., Gadbury v. Bleitz*, 133 Wash. 134, 233 P. 299, 44 A.L.R. 425 (1925).

4. Mental distress which accompanied physical harm was often compensated as a parasitic damage. 1 T. Street, *Foundations of Legal Liability* 470 (1906); *see, e.g., Redick v. Peterson*, 99 Wash. 368, 169 P. 804 (1918).

5. Mental distress to a plaintiff caused by fear for his own safety expressed in our cases as an immediate physical invasion of plaintiff's person or security or a direct possibility thereof, was a ground for recovery in some jurisdictions. *See, e.g., Murphy v. Tacoma*, 60 Wn.2d 603, 374 P.2d 976 (1962).

6. Mental distress resulting from witnessing harm to another led to divided results. *See, e.g., Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968); *Jelley v. LaFlame*, 108 N.H. 471, 238 A.2d 728 (1968).

7. Mental distress alone, without accompanying physical injury or physical consequences, or any other independent basis for tort liability, generally led to no recovery. W. Prosser, *supra* § 54, at 328.

*See generally* W. Prosser, *supra* § 54; Smith, *Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli*, 30 Va. L. Rev. 193 (1944).

Analysis of the English cases begins with the Privy Council decision in *Victorian Rys. Comm'rs v. Coultas*, [1888] 13 A. C. 222 (P.C.) (Austl.). There the husband and wife were riding in a buggy which approached a railroad crossing. The gatekeeper lifted the gate despite the imminent passage of a rapidly moving train which narrowly missed the buggy. The plaintiff wife fainted, resulting in physical symptoms of injury. In denying recovery, the court held: (1) that the damages were not a consequence which in the ordinary course of things would flow from the negligence (presumably foreseeability); (2) that the damages were too remote; (3) that there would be great difficulty of proof; (4) that it would open a wide field for imaginary claims; and (5) that there was no English precedent for

recovery. The court did not decide whether an actual impact was necessary.

Soon thereafter the remoteness premise was rejected in *Bell v. Great Northern Ry. of Ireland,* 26 L.R. Ir. 428, 442 (1890). The court reasoned that

> as the relation between fright and injury to the nerve and brain structures of the body is a matter which depends entirely upon scientific and medical testimony, it is impossible for any Court to lay down, as a matter of law, that if negligence cause fright, and such fright, in its turn, so affects such structures as to cause injury to health, such injury cannot be "a consequence which, in the ordinary course of things would flow from the" negligence, unless such injury "accompany such negligence in point of time."

Next to reject the *Coultas* reasoning was *Dulieu v. White & Sons,* 2 K.B. 669 (1901), where the pregnant plaintiff was behind the bar of her husband's pub when the defendant servant drove a pair-horse van thereinto. This event caused plaintiff severe shock and illness and was the cause of the premature birth of her child. The court held that the requirement of physical impact was unreasonable and found the remoteness of damage argument unpersuasive. The court focused rather upon the question of proof of the physical injury as a direct and natural effect of the nervous shock. Subsequent resolution of the pertinent issues in the English cases is discussed in R. Heuston, *Salmond on the Law of Torts* § 77, at 270-75 (15th ed. 1969); R. Percy, *Charlesworth on Negligence* §§ 33-41, at 19-27 (5th ed. 1971). The latter summarizes the English current rules thusly:

> 1. When there is a breach of the duty to take care, the damage may take the form of a shock without a direct physical impact.
> 2. Reasonable fear of immediate physical injury to the plaintiff himself resulting in a shock is actionable.
> 3. Reasonable fear of immediate physical injury to the plaintiff's family, or to his friends, or, doubtfully, to third parties, resulting in a shock is actionable.
> 4. The sight of an accident causing physical injury to

the plaintiff's family, or to his friends, or, doubtfully, to third parties, resulting in a shock is actionable.

5. Hearing the noise of an accident causing physical injury to human beings resulting in a shock is by itself not actionable.

6. The sight of physical injury caused otherwise than to a human being, *e.g.* to a corpse, to an animal or to property, resulting in a shock is not actionable.

7. A report by a third party that physical injury to a member of the plaintiff's family has been caused by the defendant's negligence, resulting in a shock, is not actionable, unless such intervening act by the third party was reasonable in the circumstances or to be expected.

(Footnotes omitted.) R. Percy, *Charlesworth on Negligence* § 41, at 26, 27.

Interestingly, there are statutes in some British Commonwealths dealing with the matter. New Zealand Law Reform Act 1944, section 2. New South Wales Law Reform (Misc. Provisions) Act 1944, part 3, section 4(1).

The American jurisdictions quickly developed conflicting lines of authorities. An early leading case denying liability was *Mitchell v. Rochester Ry.*, 151 N.Y. 107, 45 N.E. 354 (1896). In *Mitchell*, recovery was denied to the plaintiff, a pregnant woman who, although not physically touched, was negligently caused to abort her child and suffered a consequent illness. Plaintiff was frightened by defendant's horse-drawn car which was being operated in such a reckless manner that, when finally restrained, the plaintiff was trapped between the heads of the horses. Three reasons were given by the court for dismissing plaintiff's complaint. First, since the plaintiff could not recover for mere fright, there could be no recovery of damages for the consequences resulting therefrom. Second, the court assumed that the miscarriage was not the natural and probable consequence of defendant's negligence, but rather was due to an unusual combination of circumstances not reasonably foreseeable and, therefore, too remote to justify recovery. Third, the court reasoned that recovery would be contrary to public policy because the type of injury could be feigned

without detection and would result in a flood of fictitious and speculative claims.

The *Mitchell* rule survived in New York until 1961 when it was overruled in *Battalla v. State*, 10 N.Y.2d 237, 176 N.E.2d 729 (1961).

An opposite view was taken in *Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59 (1890), where an assault in the presence of the plaintiff caused her fright which produced a miscarriage. In allowing recovery the court said at page 215:

That a physical personal injury may be produced through a strong emotion of the mind there can be no doubt. The fact that it is more difficult to produce such an injury through the operation of the mind than by direct physical means affords no sufficient ground for refusing compensation in an action at law when the injury is intentionally or negligently inflicted. It may be more difficult to prove the connection between the alleged cause and the injury, but if it be proved, and the injury be the proximate result of the cause, we can not say that a recovery should not be had.

For a history of the development of the law in the American jurisdictions and analysis of the problems encountered by the courts *see* Brody, *Negligently Inflicted Psychic Injuries: A Return to Reason*, 7 Vill. L. Rev. 232 (1961-62); Goodrich, *Emotional Disturbance as Legal Damage*, 20 Mich. L. Rev. 497 (1922); Harper & McNeely, *A Re-examination of the Basis for Liability for Emotional Distress*, 1938 Wis. L. Rev. 426; Lambert, *Tort Liability for Psychic Injuries*, 41 Boston U. L. Rev. 584 (1961); Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv. L. Rev. 1033 (1936); Throckmorton, *Damages for Fright*, 34 Harv. L. Rev. 260 (1921); Comment, *Negligently Inflicted Mental Distress: The Case for an Independent Tort*, 59 Ga. L.J. 1237 (1971); Note, 76 W. Va. L. Rev. 176 (1974).

From early in its history, this court has allowed recovery of damages for mental distress, even without physical impact or injury, when the defendant's act was willful or intentional. *See Willson v. Northern Pac. R.R.*, 5 Wash. 621,

32 P. 468 (1893); *Davis v. Tacoma R. & Power Co.*, 35 Wash. 203, 77 P. 209 (1904); *McClure v. Campbell*, 42 Wash. 252, 84 P. 825 (1906); *Wright v. Beardsley*, 46 Wash. 16, 89 P. 172 (1907); and *Nordgren v. Lawrence*, 74 Wash. 305, 133 P. 436 (1913).

Where the defendant's actions were negligent and there was no impact to the plaintiff, our cases initially adopted the then general rule of no liability for mental distress. *See Corcoran v. Postal Telegraph-Cable Co.*, 80 Wash. 570, 142 P. 29 (1914); *Kneass v. Cremation Soc'y*, 103 Wash. 521, 175 P. 172, 10 A.L.R. 442 (1918); *Barnes v. Bickle*, 111 Wash. 133, 189 P. 998 (1920); *Stiles v. Pantages Theatre Co.*, 152 Wash. 626, 279 P. 112 (1929).

A departure from the impact rule was first recognized in *O'Meara v. Russell*, 90 Wash. 557, 156 P. 550 (1916). In *O'Meara*, the defendant was blasting stumps near the plaintiff's home. In the process of blasting, a stump was dislodged and hurled through the air into plaintiff's house. The plaintiff was standing in the house at the time and saw the stump coming toward her, and saw it strike the house a few feet from her head. In an effort to protect herself and escape the threatened danger she sustained direct physical injury. Recovery was premised upon the fact that the defendant's act, which caused the fright, reasonably induced action which resulted in an external injury. In allowing recovery, the court relied heavily upon the existence of physical injuries.

> In this case the injuries resulting from the fright were physical injuries. They were not psychological or mental. It seems, under these circumstances, where there is physical injury which results naturally, that the injured person is entitled to recover equally as though there had been a direct impact which caused the same injury.

*O'Meara v. Russell, supra* at 563.

This departure from the impact rule was further refined in *Frazee v. Western Dairy Prods.*, 182 Wash. 578, 47 P.2d 1037 (1935). In *Frazee*, the pregnant plaintiff was sitting in her living room when she observed a runaway truck coming toward her house. Her young son was in the yard. She

testified to her alarm as to the safety of her son and the fear that the truck would strike her house and possibly set it on fire. The truck overturned in the yard but did not reach the house. Plaintiff ultimately suffered a miscarriage. Recovery was allowed because, like the *O'Meara* case, the facts constituted a threat of an immediate physical invasion of the plaintiff's personal security.

Thus, this court adopted a zone of danger rationale rather than requiring an actual physical impact. *Murphy v. Tacoma*, 60 Wn.2d 603, 620-21, 374 P.2d 976 (1962), summarized the Washington rules:

> [G]enerally, in cases which do not involve malice or intent to do harm, there must be either an immediate physical invasion of the plaintiff's person or security, or a direct possibility of such an invasion in order that recovery may be had for mental anguish or distress of mind.

The rule is simply a rule of thumb. At times our cases have deviated from the rule "either in [their] reasoning or on the facts" in allowing recovery. *Murphy v. Tacoma, supra* at 621. In *Schurk v. Christensen*, 80 Wn.2d 652, 497 P.2d 937 (1972), we indicated our willingness, in the appropriate case, to reexamine the rule and its application.

In the main, the reasons advanced by the courts for denying recovery, *i.e.*, lack of precedent, increased litigation, remoteness, and fear of fictitious and feigned claims, have now been generally discarded. *See* Lambert, *Tort Liability for Psychic Injuries*, 41 Boston U. L. Rev. 584 (1961); Throckmorton, *Damages for Fright*, 34 Harv. L. Rev. 260 (1934); *Schurk v. Christensen, supra* at 658 (Finley, J., dissenting). The old rationales are simply no longer viable. In light of this, we consider this to be the case to reexamine the question of liability for the negligent infliction of mental distress.

We emphasize that this case does not involve mental distress alone. Our decision necessarily is predicated upon the existence of physical symptoms evidencing and resulting from the emotional distress. We say that this is necessarily so because these are the facts of this case. Plaintiff

suffered physical heart damage as well as emotional distress. Whether there is liability for emotional distress unmanifested by any physical symptoms must be determined in another case.

It is apparent from a survey of this area of the law that the application of the various rules, their exceptions and aberrations, has led the courts to reach absurd results and created numerous artifical boundaries. *See generally* W. Prosser, *supra* § 54. Rather than add to the already existing confusion with the formulation of a new rule, we conclude that the wisest approach is to return to the traditional principles, theories, and standards of tort law. Thus we test the plaintiff's negligence claim against the established concepts of duty, breach, proximate cause, and damage or injury.

Not every act which causes harm results in legal liability. For various reasons, often unarticulated, the courts have placed limitations on liability. The most common vehicle for circumscribing the boundaries of liability has been the court's definition of duty, applicable to particular facts. The bald conclusion that there is or is not a duty falls short of the necessary analytical mark. Dean Prosser puts it well:

> There is a duty if the court says there is a duty; the law, like the Constitution, is what we make it. Duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the essential question. When we find a duty, breach and damage, everything has been said. The word serves a useful purpose in directing attention to the obligation to be imposed upon the defendant, rather than the causal sequence of events; beyond that it serves none. In the decision whether or not there is a duty, many factors interplay: the hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community, "always keeping in mind the fact that we endeavor to make a rule in each case that

will be practical and in keeping with the general understanding of mankind."

(Footnotes omitted.) W. Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 15 (1953). *See* Green, *The Duty Problem in Negligence Cases*, 28 Colum. L. Rev. 1014 (1928), and 29 Colum. L. Rev. 255 (1929); Symmons, *The Duty of Care in Negligence: Recently Expressed Policy Elements*, 34 Modern L. Rev. 394 (1971).

Essentially we are balancing the interest of the injured party to compensation against the view that a negligent act should have some end to its legal consequences.

■■ Balancing those interests and subject to the limitations hereafter set forth, we conclude that the plaintiff who suffers mental distress has a cause of action; that is to say, the defendant has a duty to avoid the negligent infliction of mental distress. It is not necessary that there be any physical impact or the threat of an immediate physical invasion of the plaintiff's personal security. Our experience tells us that mental distress is a fact of life. With adequate limitations, the courts can administer the adjudication of this tort just as it does the complex intricacies of products liability and medical malpractice.

What are the confines of the defendant's liability? The very concept of negligence provides the primary boundaries.

Negligence . . . is conduct which falls below the standard established by law for the protection of others against unreasonable risk. It necessarily involves a foreseeable risk, a threatened danger of injury, and conduct unreasonable in proportion to the danger. If the defendant could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what he could anticipate, there is no negligence, and no liability.

(Footnote omitted.) W. Prosser, *Handbook of the Law of Torts* § 43, at 250 (4th ed. 1971). *See* Campbell, *Duty, Fault and Legal Cause*, 1938 Wis. L. Rev. 402.

The element of foreseeability plays a large part in determining the scope of defendant's duty. *Wells v. Vancouver*,

77 Wn.2d 800, 467 P.2d 292 (1970). The point is summarized by the Hawaii Supreme Court:

> [A] further limitation on the right of recovery, as in all negligence cases, is that the defendant's obligation to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous.

*Rodrigues v. State*, 52 Hawaii 156, 174, 472 P.2d 509 (1970).

A further restriction on the issue of liability is the requirement that the mental and emotional suffering, to be compensable, must be manifested by objective symptomatology. Admittedly there is some artificiality in drawing this line, but we do so in view of the facts of this case.

Inherent in the formula is the principle that the plaintiff's mental distress must be the reaction of a normally constituted person, absent defendant's knowledge of some peculiar characteristic or condition of plaintiff. In other words, was plaintiff's reaction that of a reasonable man? *Rodrigues v. State, supra.* This principle goes to the standard of liability, not the extent of recovery once liability is established. Comment, *Negligence and the Infliction of Emotional Harm: A Reappraisal of the Nervous Shock Cases*, 35 U. Chi. L. Rev. 512, 519 (1968).

Fear, fright, or distress for the peril of another poses a troublesome problem, yet provides another safeguard against boundless liability. We decline to draw an absolute boundary around the class of persons whose peril may stimulate the mental distress. This usually will be a jury question bearing on the reasonable reaction to the event unless the court can conclude as a matter of law that the reaction was unreasonable. *See Leong v. Takasaki*, 55 Hawaii 398, 520 P.2d 758 (1974).

Turning to facts in this case, it is apparent that the defendant had a duty not to drive her automobile into the plaintiff's house. What was the foreseeable risk of that conduct? What was the threatened danger? Who would be foreseeably endangered by defendant's conduct? Was the

plaintiff's reaction that of a reasonable person, normally constituted? These are questions of fact for the jury to resolve.

The judgment is reversed and remanded for a new trial.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and HOROWITZ, JJ., concur.