[No. 12378-9-II. Division Two. January 11, 1990.]

DORIS SHOEMAKER, *Individually and as Personal Representative, Appellant,* v. ST. JOSEPH HOSPITAL AND HEALTH CARE CENTER, ET AL, *Respondents.*

unless he comes within some other protected class, such as an heir, devisee, legatee, assignee, etc. under some statutes."

576

*Robert D. Reinhard,* for appellant.

*William R. Hickman, Heather Houston,* and *Reed McClure Moceri Thonn & Moriarty,* for respondent St. Joseph Hospital.

*Kelly P. Corr, Michael Mirande, Nicholas Wagner,* and *Bogle & Gates,* for respondents Ramos.

*Lee M. Barns* and *Houger, Miller & Stein,* for respondents Anderson.

WORSWICK, J.—Brian Unsin leaped to his death from a window at St. Joseph Hospital moments after his mother, Doris Shoemaker, came into his room to visit. Shoemaker, individually and as Unsin's personal representative, asserted several different claims in this lawsuit against the hospital and several doctors. She now appeals summary judgment dismissing her individual claims for the torts of outrage and negligent infliction of emotional distress, and her claim under the child death statute (RCW 4.24.010) for loss of consortium.

Shoemaker contends that her right to equal protection of the law has been violated by a provision in the child death statute that disqualifies her from claiming loss of consortium. She also contends that the trial court erred in excluding her from the class eligible to sue for outrage and negligent infliction of emotional distress. We disagree with the first contention and agree with the second. We affirm, nevertheless, holding that the trial court's ruling can be sustained on other, proper grounds.

Unsin was admitted to St. Joseph with self–inflicted scrotal lacerations, the result of an apparent suicide attempt. Dr. Ronald Anderson, a urologist, repaired the wounds, then sought to admit Unsin to the psychiatric ward. A nurse refused admittance, whereupon Anderson placed Unsin on the medical ward under "suicide precautions," with one–to–one nursing care. He was not physically restrained or chemically sedated.

Throughout the night Unsin was delusional, and he spoke of death and his desire to die. The following morning, Unsin underwent a brief consultation with Dr. Rufino Ramos, a psychiatrist, who diagnosed "major depressive disorder with psychotic features." Ramos did not recommend restraint or sedation. The fatal event occurred later that day after Shoemaker entered the room while a nurse was changing Unsin's intravenous equipment. Unsin became increasingly agitated during the procedure, and suddenly he rose from the bed and leaped out the seventh floor window.

Shoemaker sought damages for loss of consortium as part of her child death claim under RCW 4.24.010. The trial court dismissed the claim because Unsin, at the time of his death, was an adult and Shoemaker was not dependent upon him for support, a statutory prerequisite of Shoemaker's claim.[1] *See Warner v. McCaughan,* 77 Wn.2d 178, 460 P.2d 272 (1969). Shoemaker contends that this statutory scheme unconstitutionally deprives her of equal protection of the law because parents of minor children who die need not be dependent to recover damages for loss of consortium, and that she should not be barred simply because her son had reached majority. We disagree.

■ Shoemaker poses the issue as involving a distinction in treatment of parents of children who die at different ages. She is mistaken. The issue has to do with persons who were dependent on a decedent as contrasted with those who were not. *Gray v. Goodson,* 61 Wn.2d 319, 325, 378 P.2d 413 (1963). Moreover, it involves a cause of action given life entirely through legislation. *Gray v. Goodson, supra.* Legislatively created rights are peculiarly subject to legislatively created conditions. *Shope Enters., Inc. v. Kent Sch. Dist.,* 41 Wn. App. 128, 131, 702 P.2d 499 (1985).

---

[1] RCW 4.24.010 provides, in part:

"**Action for injury or death of child.** The mother or father or both may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either, or both, are dependent for support: . . .."

 Minimal scrutiny analysis applies to Shoemaker's claim, because the child death statute does not affect fundamental rights or create a suspect class. *Cosro, Inc. v. Liquor Control Bd.*, 107 Wn.2d 754, 759–60, 733 P.2d 539 (1987). Under this test, the classification need only have a rational basis and be consistent with the purpose of the legislation. *Paulson v. County of Pierce*, 99 Wn.2d 645, 653, 664 P.2d 1202, *appeal dismissed*, 464 U.S. 957, 78 L. Ed. 2d 331, 104 S. Ct. 386 (1983). Clearly there is a rational basis for creating in a dependent claim for the wrongful death of one upon whom he or she was dependent. Shoemaker's further argument, that it is unreasonable to link dependency to eligibility to recover for the noneconomic loss of consortium, is without merit. Only the statutory classification is reached by an equal protection challenge. If the Legislature has delineated a proper class, it then has broad latitude in providing remedies to that class.[2]

Shoemaker next contends that the trial court erred in dismissing her claims of outrage and negligent infliction of emotional distress because she was not dependent on Unsin for support. We agree that this basis for the ruling was erroneous.

Only an immediate family member may bring an outrage claim that is based on conduct directed at a third person. *Grimsby v. Samson*, 85 Wn.2d 52, 60, 530 P.2d 291, 77 A.L.R.3d 436 (1975). The same is true for claims of negligent infliction of emotional distress. *Cunningham v. Lockard*, 48 Wn. App. 38, 45, 736 P.2d 305 (1987). In *Strickland v. Deaconess Hosp.*, 47 Wn. App. 262, 735 P.2d 74, *review denied*, 108 Wn.2d 1028 (1987), Division Three refined the *Grimsby* test by holding that an immediate

---

[2]In the alternative, Shoemaker asks us to expand the common law and recognize a new cause of action in this case. *See Ueland v. Pengo Hydra–Pull Corp.*, 103 Wn.2d 131, 136, 691 P.2d 190 (1984) (the court, in the interests of justice, may recognize a new cause of action). We decline to do so. We must defer to the Legislature and its decision to define the class of beneficiaries with reference to dependency. *See Burkhart v. Harrod*, 110 Wn.2d 381, 388–90, 755 P.2d 759 (1988).

family member means a person in the class permitted to bring a wrongful death action. *Strickland,* 47 Wn. App. at 269. The trial court in this case dismissed the claims because it assumed that *Strickland* required Shoemaker to qualify to bring a wrongful death action on her own behalf in order to pursue these personal claims—*i.e.,* that she be a family member *and* Unsin's dependent. The court erred.

*Strickland* did not speak to the economic status of dependency; it purported only to define a *class* of relatives, *i.e.,* what persons were "immediate family members." The court said:

> [W]e determine the class of "immediate family members" entitled to recover under a theory of outrage consists of those who are permitted to bring wrongful death actions. . . . Under that statute the Legislature has expressed the policy that recovery is available to spouses, children, stepchildren, parents, and siblings. RCW 4.20.020. We conclude its limitation is reasonable and comports with *Grimsby*'s reference to "immediate family"; and hold its rationale applies in an action for outrage.

(Footnote omitted.) *Strickland,* 47 Wn. App. at 268–69. A reading of the *Strickland* opinion as a whole reveals that no issue of dependency was before the court.

The torts of outrage and negligent infliction of emotional distress originated in the common law. *See Grimsby v. Samson, supra; Hunsley v. Giard,* 87 Wn.2d 424, 553 P.2d 1096 (1976). They did not arise from the wrongful death or child death statutes or from any other legislative enactment. Consequently, Division Three's reference in *Strickland* to the wrongful death statute (RCW 4.20.020) was not an attempt to bring these torts within any statutory framework, but was merely a shorthand method of identifying a group of persons referred to in *Grimsby* as immediate family members. That also was our intent in *Cunningham.* Should there be any doubt concerning our position, we now hold that "immediate family members," as the term is used in *Grimsby,* means the class of relatives enumerated in RCW 4.20.020. The economic status of dependency is irrelevant to the standing of a member of that class to bring a common law action for the torts of outrage or negligent

infliction of emotional distress. The error does not require reversal, however, because the record discloses a proper ground to support the court's ruling, and we are permitted to affirm on such a ground. *Nast v. Michels,* 107 Wn.2d 300, 308, 730 P.2d 54 (1986). As a matter of law, Shoemaker cannot prevail on these claims.

■ The undisputed facts most favorable to Shoemaker involve no intentional or reckless acts. At most, the defendants or some of them may have been negligent in failing to restrain or sedate Unsin, refusing to admit him to the psychiatric ward, failing to administer a timely mental status examination, failing to make a proper diagnosis, maintaining inadequate records, and allowing Unsin's disturbance to be exacerbated by Shoemaker's visit. These facts do not come close to making an outrage case. *See, e.g., Wolf v. Scott Wetzel Servs., Inc.,* 113 Wn.2d 665, 782 P.2d 203 (1989); *Babcock v. State,* 112 Wn.2d 83, 768 P.2d 481, *reh'g granted,* September 6 (1989); *Guffey v. State,* 103 Wn.2d 144, 690 P.2d 1163 (1984); *Contreras v. Crown Zellerbach Corp.,* 88 Wn.2d 735, 565 P.2d 1173 (1977); *Grimsby v. Samson, supra.* Shoemaker's outrage claim could not reach the jury on these facts, and it was the trial court's responsibility to make that determination. *Spurrell v. Bloch,* 40 Wn. App. 854, 862, 701 P.2d 529, *review denied,* 104 Wn.2d 1014 (1985).

■ Shoemaker cannot prevail on her claim for negligent infliction of emotional distress for two reasons. First, she has presented no evidence to show that her claimed mental or emotional distress has been "manifested by objective symptomatology", *i.e.,* "physical symptoms evidencing and resulting from the emotional distress." *Hunsley,* 87 Wn.2d at 433, 436. Affidavits and depositions from Shoemaker, her daughter and a psychologist state that Shoemaker suffered from sleep disturbances and nightmares, tearful outbursts, low energy level, and recurrent "intrusive memories". However, they also show that she was never under a doctor's care, never received or requested medication, and that her social and occupational functioning have been unimpaired.

The psychologist hired by Shoemaker's attorney to conduct a mental evaluation did not consider Shoemaker to be clinically depressed. Considering the evidence in the light most favorable to Shoemaker, these symptoms are not "signs of distress above that level which is a fact of life." *Spurrell,* 40 Wn. App. at 863.

Moreover, the duty to refrain from negligent infliction of emotional harm "is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." *Hunsley v. Giard,* 87 Wn.2d at 436 (quoting *Rodrigues v. State,* 52 Hawaii 156, 472 P.2d 509 (1970)). Shoemaker has produced no evidence showing that the hospital or the doctors should have foreseen that her son would leap out of the window in her presence.[3]

Affirmed.

PETRICH, A.C.J., and REED, J., concur.

Review denied at 114 Wn.2d 1025 (1990).

---

[3]Foreseeability was not raised by defendants prior to oral argument, but we may nevertheless consider the issue since it is necessary to reach a proper decision. *Falk v. Keene Corp.,* 113 Wn.2d 645, 782 P.2d 974 (1989).