**Karl LINDSEY, as personal representative of the Estate of Kurt A. Lindsey; and Vicki Bleifuss, Plaintiffs,**

v.

**VISITEC, INC., a corporation, and Jaciej Zalewski, Defendants.**

**No. C91–204Z.**

United States District Court,
W.D. Washington,
at Seattle.

Oct. 28, 1992.

Mark Allen Johnson, Inc., P.S., Seattle, Wash., for plaintiffs.

Larry B. Alexander and Tracy R. Antley, Alexander and Associates, Seattle, Wash., for defendants.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on defendants' Motion to Limit Plaintiff Bleifuss' Damage Recovery, docket no. 29. Having considered defendants' motion and all papers in support of and in opposition thereto, the Court hereby GRANTS in part and DENIES in part defendants' motion for partial summary judgment.

## BACKGROUND

On July 14, 1990, plaintiff Vicki Bleifuss was a passenger in a pickup truck which was driven by her boyfriend/fiance of two-and-one-half-years, Kurt Lindsey. They were travelling eastbound on U.S. Highway 2 near Index in Snohomish County. At the same time, defendant Zalewski was driving westbound on Highway 2 in a rental car leased to Visitec, Inc., a South Dakota corporation for which he was acting as an agent.

Mr. Zalewski fell asleep at the wheel and crossed the centerline into the oncoming truck driven by Mr. Lindsey. Mr. Lindsey was killed in the head-on collision and Ms. Bleifuss was seriously injured. She suffered three broken ribs and a broken left arm. She was removed from the truck and airlifted to Harborview Hospital in Seattle, where she remained for three days. She recovered from these injuries in about three months and returned to work within eight weeks after the accident.

Plaintiffs in this action are Kurt Lindsey's father Karl, as representative of the deceased's estate, and Ms. Bleifuss. On January 13, 1992, this Court granted summary judgment for plaintiffs on the issues of agency and liability. On October 13, the Court received notification that Visitec and plaintiff Karl Lindsey, as personal representative of the Estate of Kurt Lindsey, had settled. Thus the only claim remaining is for damages that are due to Ms. Bleifuss.

Ms. Bleifuss and Mr. Lindsey had been involved in a romantic relationship together for two and a half years and had been living together for approximately one year before the accident. Vicki Bleifuss Deposition at 22, Motion, docket no. 29. They had discussed getting married but had no immediate plans for marriage. *Id.* at 25–27.

Vicki Bleifuss has suffered severe emotional distress since the accident, which she attributes to Mr. Lindsey's death, the loss of "the greatest love of my life." Vicki Bleifuss Dep. at 45, 53. After briefly attending group therapy following the accident, Ms. Bleifuss has avoided seeking therapy regarding her grief because she has found it too painful to have to directly confront her grief over his death. *Id.* at 49–50.

Ms. Bleifuss' mother notes that her daughter is still affected by the accident, has lost weight, changed her appearance, and is not interested in dating anyone. Marjorie Bleifuss Deposition.

A psychologist who performed an evaluation of Ms. Bleifuss for the defense testified that she continues to suffer from grief from the death of Mr. Lindsey and described her condition as "prolonged bereavement syndrome." Criddle Deposition at 28–29, Response, docket no. 31. Dr. Criddle also testified that her emotional distress over Mr. Lindsey's death was a part of her trauma over "the total event" of the accident. *Id.* at 24. He found this trauma to be manifested in increased fearfulness, decreased caring and happiness, social withdrawal, and concentration difficulties at work. *Id.* at 24–25.

A psychiatrist retained by plaintiffs to examine Ms. Bleifuss concluded that she suffers from "delayed bereavement syn-

drome" and "traumatic stress syndrome" caused by Mr. Lindsey's death and the accident. He believes the emotional disturbance caused by the accident and the death are intertwined. Reiter Deposition, Response, docket no. 31.

Ms. Bleifuss' employer has testified that her work performance has suffered since the accident. Woeppel Affidavit, Response, docket no. 31.

In this motion for summary judgment, defendants seek to exclude recovery "for the emotional distress Ms. Bleifuss suffered caused by the death of her companion, Kurt A. Lindsey" and "to limit her recovery to emotional distress which is reasonable and manifested by objective physical symptoms." Motion, docket no. 29.

## STANDARD

Defendants fail to set forth any standard by which the Court is to judge their arguments. However, they argue in this motion that there are no material facts in dispute and that Washington law precludes Ms. Bleifuss from recovering damages for emotional distress. Their motion thus fits within the Federal Rules of Civil Procedure Rule 56 summary judgment framework.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the question is whether the evidence, together with permissible inferences drawn from that evidence, is sufficient to establish a "genuine issue as to any material fact." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir.1989), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). Inferences may be drawn from underlying undisputed facts, such as background or contextual facts, as well as from disputed underlying facts which the judge must assume will be resolved at trial in favor of the nonmoving party. *Phelps Dodge*, 865 F.2d at 1545.

## DISCUSSION

### I. Reasonableness

Defendants argue that "Vicki Bleifuss' reaction to her boyfriend's death has not been that of a reasonable person, which bars recovery for her distress." Motion at 12, docket no. 29.

However, Dr. Reiter's declaration asserts that Ms. Bleifuss' reaction is "that of a young woman who has experienced a horrifying trauma which has caused her a serious emotional disability" and that "there is no indication of an abnormal or hypersensitive reaction." Reiter Declaration at 4, Response, docket no. 31.

In addition to this testimony in the record, judgments of reasonableness are generally left to the jury. The record before the Court does not support a finding as a matter of law that Ms. Bleifuss' reaction to Kurt Lindsey's death or to the accident was unreasonable. The Court therefore DENIES defendants' motion for summary judgment that Ms. Bleifuss' reaction is unreasonable.

### II. Physical Manifestations of Emotional Distress

Defendants argue that the plaintiff cannot recover for emotional distress unless she exhibits physical symptoms evidencing and resulting from the emotional distress. *Hunsley v. Giard*, 87 Wash.2d 424, 436, 553 P.2d 1096 (1976); *accord, Cunningham v. Lockard*, 48 Wash.App. 38, 43, 736 P.2d 305 (1987). They argue that as a factual matter, Ms. Bleifuss fails to exhibit such symptoms.

In one case, the Washington Court of Appeals found that sleep disturbances and nightmares, tearful outbursts, low energy levels, and recurrent "intrusive memories" were not sufficient to establish the requisite objective symptomatology for recovery. *Shoemaker v. St. Joseph Hospital*, 56 Wash.App. 575, 784 P.2d 562 (1990), *review den.*, 114 Wash.2d 1025, 792 P.2d 500 (1990).

However, the objective symptomatology requirement of *Hunsley* is not limited to purely physical manifestations such as gas-

trointestinal disorders, as defendants assert. The requirement is only that the manifestations be objective in nature. Depression, sleeplessness, loss of weight, and social and professional functional impairment are all objective symptoms. *See Hunsley*, 87 Wash.2d at 436, 553 P.2d 1096; *Corrigal v. Ball and Dodd Funeral Home*, 89 Wash.2d 959, 962, 577 P.2d 580 (1978); *Shoemaker*, 56 Wash.App. at 581, 784 P.2d 562. In *Shoemaker*, where recovery was denied, only a few of these symptoms were present. In addition, the *Shoemaker* plaintiff's social and occupational functioning were found to be unimpaired and she was not diagnosed as clinically depressed.

■ In the case before the Court, Ms. Bleifuss has been diagnosed as suffering from sleep disturbances. She has lost weight. She has been described as socially withdrawn since the accident, and her work performance has suffered. These are all objective symptoms of emotional distress under Washington law. Based on the deposition testimony and affidavits submitted by plaintiffs, the Court cannot find, as a matter of fact or law, that Ms. Bleifuss does not manifest objective symptoms of emotional distress. The Court thus DENIES defendants' motion for summary judgment that Ms. Bleifuss fails to manifest objective symptom of emotional distress.

### III. Compensation to Non-relative

Plaintiff seeks recovery for the negligent infliction of emotional distress resulting from the death of Mr. Lindsey. The issue presented is whether a plaintiff who is the cohabitant of the victim but not a closely related or an immediate family member can recover under the facts of this case. This Court, sitting in diversity, must apply the law of Washington. *Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Although Washington courts have not addressed this issue directly, their

related decisions clearly direct this Court to answer the question in the negative.

In *Hunsley v. Giard*, 87 Wash.2d 424, 553 P.2d 1096 (1976), the Washington Supreme Court declined to draw an absolute boundary around the class of persons whose peril may stimulate emotional distress. Rather, the Court focused on whether the injury was foreseeable in determining the scope of a defendant's duty. This question is usually a factual question in Washington unless the court can determine as a matter of law that the reaction is unreasonable. *Id.* at 436, 553 P.2d 1096.

Subsequent to *Hunsley*, the Washington courts have demonstrated a willingness to limit recovery in this area as a matter of law, to persons who can be described as "immediate family." In *Cunningham v. Lockard*, 48 Wash.App. 38, 736 P.2d 305 (1987), children seeking recovery for the negligent infliction of emotional distress were not permitted to recover because they were not present at the time of the accident. The *Cunningham* Court, relying upon the boundary set for the tort of "outrage" [1] (also known as the intentional infliction of emotional distress in Washington), concluded that the legal liability of defendants who negligently inflict emotional distress must be limited to "plaintiffs who are actually placed in peril by the defendant's negligent conduct and to family members present at the time who fear for the one imperiled." *Cunningham*, 48 Wash.App. at 45, 736 P.2d 305.

In *Shoemaker v. St. Joseph Hospital*, 56 Wash.App. 575, 784 P.2d 562 (1990), the parent of a patient who committed suicide in a hospital was denied recovery for outrage and negligent infliction of emotional distress because the plaintiff suffered no objective symptoms and because suicide was not reasonably foreseeable. The *Shoemaker* Court also held that "immediate family members" as used in *Grimsby* to determine the boundaries of persons who could recover for outrage means the class of relatives enumerated in R.C.W. 4.20.020,

---

[1] In Washington, a plaintiff seeking recovery for the tort of outrage must establish that he or she is "an immediate family member" of the person who is the object of the defendant's action. *Grimsby v. Samson*, 85 Wash.2d 52, 530 P.2d 291 (1975).

the state's Wrongful Death Statute. Under this statute, only spouses, children, stepchildren, parents, and siblings of a victim may recover.

Similarly in *Strickland v. Deaconess Hosp.*, 47 Wash.App. 262, 735 P.2d 74, *review den.*, 108 Wash.2d 1028 (1987), plaintiffs were adult "sons" who brought an outrage claim against a hospital for treatment of their "stepfather." They had been raised in a household with their mother and "stepfather", but the marriage was later invalidated and they were never formally adopted. The court summarily found that Washington had adopted the Restatement (Second) of Torts § 46 element of outrage that only "immediate family" are entitled to sue, but not the Restatement comment that "close associates ... of the person attacked" may also bring a claim. *Id.* 47 Wash.App. at 267–68, 735 P.2d 74. The *Strickland* court denied recovery to the plaintiffs, because they "were not adopted, nor were they stepchildren, since Mr. Strickland's marriage to their mother was invalidated," and held that they had no standing to bring a claim of outrage. In reaching its conclusion, the court reasoned that:

> If we were to define the class of people who may bring this action to include the Weavers, we would include within the definition of immediate family members not only spouses, children, stepchildren, parents and siblings, but also individuals who are *like* spouses, children, stepchildren, parents or siblings. Such an interpretation would be so ambiguous as to limit the class of plaintiffs who could assert a claim for outrage only by the imagination of counsel drafting the pleadings.

*Id.* at 270, 735 P.2d 74 (emphasis in original).[2]

Finally, in *Gain v. Carroll Mill Company*, 114 Wash.2d 254, 787 P.2d 553 (1990), the Court, in denying recovery for negligent infliction of emotional distress because the plaintiffs were not physically

present, cited with approval *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). *Dillon* directs the courts to look at various factors to determine who can recover for the tort of negligent infliction of mental distress including whether the plaintiff and victim are "closely related." Cases in California since *Dillon* have expressly held that a plaintiff must be closely related to recover for the negligent infliction of emotional distress. *Elden v. Sheldon*, 46 Cal.3d 267, 250 Cal.Rptr. 254, 758 P.2d 582 (1988) (plaintiff living together with victim in de facto marriage not "closely related"); *Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989), (holding plaintiff must be closely related to victim). The Ninth Circuit has also recognized this requirement in California. *See Di Costa v. Aeronaves De Mexico S.A.*, 973 F.2d 1490 (9th Cir.1992).

In the case before this Court, Ms. Bleifuss was a friend and lover of the deceased for two and one-half years, and they had lived together for nearly a year. Ms. Bleifuss was sitting next to her companion when the defendant's car struck them head-on, killing her companion. She is not, however, a closely related or immediate family member entitled to recover for the negligent infliction of emotional distress resulting from the death of Mr. Lindsey. Plaintiff has failed to identify any court decision which would support her right to recover under these circumstances. The Washington courts have clearly indicated an unwillingness to extend recovery beyond family members described in the State's wrongful death statute and this Court is bound to apply Washington law. Therefore, the Court concludes that in the present case, plaintiff Bleifuss is not entitled as a matter of law to recover for negligent infliction of emotional harm as it relates to the injury and death of Mr. Lindsey.

### IV. Emotional Distress as an Item of Compensatory Damages

Plaintiffs argue that regardless of what the Court decides on the issue of negligent

---

**2.** In addition, one Washington court has held that the term "immediate family" does not include a nonmarital cohabitant for purposes of

an insurance policy. *Continental Cas. Co. v. Weaver*, 48 Wash.App. 607, 739 P.2d 1192 (1987).

infliction of emotional distress as a separate and distinct cause of action, that outcome will not affect Ms. Bleifuss' ability to recover for emotional distress for Mr. Lindsey's death as an element of compensatory damages.

Washington law recognized emotional distress as an element of compensatory damages long before *Hunsley.* *Green v. Floe,* 28 Wash.2d 620, 636, 183 P.2d 771 (1947). Plaintiffs argue that "the death of Mr. Lindsey has impaired the ability and capacity of Vicki Bleifuss to enjoy her life, diminution of which is a separate element of damages under Washington law." *Kirk v. WSU,* 109 Wash.2d 448, 764 P.2d 285 (1987). However, while *Kirk* establishes that diminution of one's enjoyment of life is compensable as part of compensatory damages, it is not applicable to the fact situation before the Court with regard to the emotional distress related to Mr. Lindsey's death. In *Kirk,* the plaintiff broke her elbow, which precluded her interest in pursuing a career in ballet. While plaintiff's physical injuries may be analogized to the injuries in *Kirk,* the loss of Mr. Lindsey is not.

Plaintiffs do not cite any case law that has found that the death of a loved one is compensable because it diminishes a plaintiff's enjoyment of life. In the absence of such precedent, the reasoning and policy decision of Washington courts in the areas of outrage and negligent infliction of emotional distress must control in the area of compensatory damages, as well. The Court holds that plaintiff may not recover compensatory damages for her emotional distress due to the death of Mr. Lindsey.

IT IS SO ORDERED.