STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-09-499

ALAN A. ARNOTT,
    Plaintiff

v.

LIBERTY MUTUAL FIRE
INSURANCE CO.,
    Defendant

RECEIVED

JUL 13 2010

Cumberland, ss. Clerk's Office
STATE OF MAINE

ORDER ON DEFENDANT'S
SUMMARY JUDGMENT
MOTION

## BEFORE THE COURT

Defendant Liberty Mutual Fire Insurance Company (hereinafter "Liberty Mutual") has filed a motion to exclude Plaintiff Alan Arnott's (hereinafter "Arnott") bystander emotional distress claim. The court addresses Liberty Mutual's motion as a motion for summary judgment because Liberty Mutual asserts that based on the stipulated facts it is entitled to judgment as a matter of law.

## BACKGROUND

Arnott sued his own insurance company, Liberty Mutual, asserting a claim for underinsured motorist coverage in connection with an accident that occurred on September 29, 2007, on Route 35 in Standish. The principal issue in contention is whether, in addition to recovering for his own injuries, Arnott is entitled to recover for bystander emotional distress on account of witnessing the injuries of his live-in girlfriend and domestic partner Kathie Watts (hereinafter "Watts").

The stipulated facts regarding the emotional distress claim are as follows: At the time of the accident, Arnott was driving his motorcycle, and Watts was riding on the back of his motorcycle as a passenger. The accident occurred when

1

a car driven by Karey Moreau (hereinafter "Moreau") coming in the opposite direction, turned left across Arnott's path. When Arnott swerved to avoid Moreau's car, both Arnott and Watts were thrown from Arnott's motorcycle and injured. Arnott has settled with Moreau's insurance carrier for $45,000, crediting Liberty Mutual with the $50,000 limit of Moreau's $50,000 liability policy. Arnott now seeks recovery from Liberty Mutual for injuries he suffered in the motor vehicle accident, and for emotional distress from witnessing the injuries Watts suffered.

Since Watts was sitting behind Arnott on the motorcycle, Arnott did not see Watts being thrown from the motorcycle, and he does not remember being thrown from the motorcycle himself. Arnott recalls the bike swerving and the next thing he remembers is being on the ground. As he sat up, he saw Watts lying on the ground moaning and rocking. He walked over to her and he observed that she had abrasions on her face and her eyes were puffy. Her eyes were closed and she was rolling onto one side and then the other. Arnott concluded that Watts was seriously injured because she was not responsive to him. At the scene of the accident, Arnott experienced anxiety and fear that Watts might die, or that she would have to go into a nursing home. Arnott has never sought, nor received any treatment or counseling for emotional distress related to this accident.

Arnott and Watts are not blood relatives, are not married, have never been married to each other, and have no plans to get married. Although not married, they plan to stay together.[1] Arnott and Watts have been living together for eight

---

[1] Arnott was in a previous marriage that did not work out well and stated that he will not get married again because he has no desire to repeat the experience.

years and they are registered as domestic partners with the City of Portland. They each own separate homes, which they acquired through earlier marriages. They both work and maintain separate bank accounts. However, they also share joint bank accounts from which they pay their respective share of all household expenses. Arnott carries Watts on his health insurance policy and dental policy. Additionally, Watts is a beneficiary of Arnott's life insurance policy. They file separate income tax returns.

## DISCUSSION

### 1. Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. Each fact contained in the supporting statement of material facts shall be supported by a record citation. M.R. Civ. P. 56(h)(1). A contested fact is "material" if it could potentially affect the outcome of the suit under the governing law. *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. A fact is "genuine" if there is sufficient evidence supporting the claimed fact to require a fact-finder to choose between competing versions of facts at trial. *Id.* For the purposes of summary judgment, factual disputes and ambiguities must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law,

3

summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924, 926.

## 2. Arnott's Bystander Emotional Distress Claim

Whether a plaintiff is owed a duty of care is a matter of law that is dependent on recognizing and weighing policy implications. *Cameron v. Pepin*, 610 A.2d 279, 282 (Me. 1992). "The determination of the extent of the duty owed in claims for negligent infliction of emotional distress involves striking a fair balance between the need to compensate foreseeable psychic injuries and the risk of imposing limitless liability." *Michaud v. Great Northern Nekoosa Corp.*, 1998 ME 213, ¶ 15, 715 A.2d 955, 958-59 citing *Cameron*, 610 A.2d at 283.

In *Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433 (Me. 1982), the Law Court adopted the foreseeability test for bystander emotional distress claims enunciated in *Dillon v. Legg*, 69 Cal. Rptr. 72, 441 P.2d 812 (1968), holding: "[A] bystander may recover damages for serious mental distress foreseeably resulting from witnessing another person harmed by the tortfeasor's negligent act." *Culbert*, 444 A.2d at 436. Under the three-factor *Dillon* test, a bystander's psychic injury may be deemed foreseeable when the plaintiff bystander (1) was present at the scene of the accident, (2) suffered serious mental distress as result of observing the accident and ensuing danger to the victim, and (3) was closely related to the victim. *Culbert*, 444 A.2d at 438; *see also Cameron*, 610 A.2d at 284-85.

Liberty Mutual argues that Arnott cannot recover for bystander emotional distress for two reasons: First, Liberty Mutual claims Arnott is precluded from recovery because he did not actually see Watts fall off the motorcycle. Second, Libery Mutual argues that Arnott is not able to recover as a bystander for Watts'

injuries because a family membership is required for a bystander emotional distress claim.

### a. A Visual Observation of the Actual Accident is Not Necessary

In support of this first argument, Liberty Mutual claims that this case is like *Cameron* and cites *Michaud* for the proposition that the plaintiff bystander may recover only if he "suffered mental distress *as a result of observing* the accident and ensuing danger to the victim." *Michaud*, ¶ 16, 715 A.2d at 959 (emphasis added). Liberty Mutual's interpretation of *Michaud* is too narrow. Moreover, Liberty Mutual's comparison of this case to the holding of *Cameron* is inapposite. In *Cameron* the plaintiffs were not at the scene of the accident and did not see their injured son until they visited him at the hospital. *Cameron*, 610 A.2d at 284.

Bystander recovery focuses on the emotional vulnerability that arises when the bystander witnesses a person to whom he is closely related receive an injury. *Cameron*, 610 A.2d at 284. A plaintiff bystander does not have to directly witness the injury in order to recover for his emotional distress. Several courts focus on the time when the plaintiff bystander became aware of the injury as the limiting factor. *See Cameron*, 610 A.2d at 284 citing *Tommy's Elbow Room, Inc. v. Kavorkian*, 727 A.2d 1038 (Alaska 1986) (replacing requirement of contemporaneous observation of the accident with requirement of seeing victim at the scene); *Corso v. Merrill*, 406 A.2d 300 (N.H. 1979) (recovery allowed to parent who did not see accident but saw victim at the accident scene). Arnott was present at the scene of the accident and he observed Watts' pain and suffering immediately after she sustained her injuries. The fact that Arnott did not actually see Watt fall off of the motorcycle is not a sufficient reason to grant

summary judgment on Arnott's claim for bystander emotional distress in this case.

### b. Only a Close Relationship to the Victim of the Negligence is Required

Liberty Mutual cites to *Michaud* to support its contention that a plaintiff asserting a bystander emotional distress claim must have a family relationship with the victim of the negligent conduct. Michaud was a scuba diving contractor. While performing a rescue dive to help two co-workers who were trapped underwater, Michaud witnessed his co-worker's leg being completely severed. Michaud brought a claim to recover for bystander emotional distress. Citing *Cameron*, the Law Court affirmed the lower court's summary judgment stating, "[T]he absence of a family relationship with the trapped divers precludes [Michaud's] claim as [a bystander], a conclusion he does not dispute." *Michaud*, ¶ 17, 715 A.2d at 959 citing *Cameron*, 610 A.2d at 284-85.

To conclude that the Law Court in *Michaud* intended to limit the protected class in bystander emotional distress claims to bystanders witnessing harm to family members is problematic for several reasons. First, the plaintiff in *Michaud* did not contest whether he was closely related to the trapped divers. *Michaud*, ¶ 17, 715 A.2d at 959. Rather, the plaintiff in *Michaud* challenged the application of the rescuer doctrine to emotional distress claims. *Michaud*, ¶¶ 18-20, 715 A.2d 959-60. Second, *Cameron*, the case the Law Court cited to in *Michaud*, only states that the bystander must be "closely related to the victim," and does not specifically limit the class of victims to family members. *Cameron*, 610 A.2d at 284-85. Third, while most of the bystander emotional distress claims decided by the Law Court have involved family members, *see Cameron*, 610 A.2d 279

6

(parents brought bystander claim following son's car accident); *Nelson v. Flanagan*, 677 A.2d 545 (Me. 1996) (son and husband asserted a bystander emotional distress claim for medical misdiagnosis of mother/wife); *Culbert v. Sampson*, 444 A.2d 433 (Me. 1982) (mother asserted a bystander claim after witnessing her baby choke), the Law Court has not defined who qualifies as a "family member," or who is "closely related."[2]

Most jurisdictions limit the bystander-victim relationship in bystander emotional distress claims to family members.[3] In *Elden v. Sheldon*, the Supreme Court of California adopted a "bright-line" rule defining the bystander-victim

---

[2] In *Magruder v. Sawyer*, the Federal District Court for the District of Maine confirmed that the protected class for bystander emotional distress claims in Maine is undefined. *Magruder v. Sawyer*, 1999 U.S. Dist. LEXIS 23059 (D. Me. Dec. 6, 1999). In *Magruder*, the plaintiff brought a bystander emotional distress claim after witnessing the defendant and others assault his fiancée. *Id.* at *2. In analyzing the claim on a motion to dismiss, United States Magistrate Judge Eugene Beaulieu wrote, "[t]he Law Court has never had the occasion to address whether persons engaged to be married are "closely related" within the meaning of the rule, but it has held that married persons qualify." *Id.* at *3. After noting that the Law Court in *Culbert* cautioned against a formulaic application of the *Dillon* factors, Magistrate Beaulieu recommended that the motion to dismiss the plaintiff's claim for lack of a "family relationship" should be denied.

[3] See *Ozdemir v. Somerset Med. Ctr.*, 2007 U.S. Dist. LEXIS 48586, * 7 n. 3 (N.D. N.Y. 2007) (stating that New York "permits only spouses and immediate family members to pursue a bystander" emotional distress claim); *Bowen v. Lumbermens Mut. Casualty Co.*, 183 Wis. 2d 627, 633 (Wis. 1994) (requiring the victim and the plaintiff to be related as spouses, parent-child, grandparent-grandchild, or siblings); *Grotts v. Zahner*, 989 P.2d 415 (Nev. 1999) (holding that under Nevada law a fiancée lacks standing to bring a bystander emotional distress claim); *Lindsey v. Visitec, Inc.*, 804 F. Supp. 1340 (D. Wash. 1992) (holding that under Washington law, a fiancée who had been living with deceased for one year was not allowed to bring a claim for bystander emotional distress); *Bercevicz v. Liberty Mutual Ins. Co.*, 865 A.2d 1267, 1272 (Conn. Super. Ct. 2004) (holding that in Connecticut a fiancée could not satisfy the closely related requirement); *Sollars v. City of Albuquerque*, 794 F. Supp. 360, 363 (D. N.M. 1992) (holding that New Mexico law would not allow the girlfriend of the deceased to assert a bystander emotional distress claim following the reasoning enunciated in *Elden v. Sheldon*); *Milberger v. KBHL, LLC*, 486 F. Supp. 2d 1156, 1167 (D. HI, 2007) (holding that Hawaii caselaw does not support permitting an unmarried partner to bring a claim for bystander emotional distress).

relationship holding that unmarried co-habitants may not recover damages based on a bystander emotional distress claim. 758 P.2d 582, 588 (Cal. 1988). In *Thing v. La Chusa*, the California Supreme Court expanded the rule from *Elden* and limited bystander recovery to persons closely related by blood or marriage, reasoning that those were the people most likely to endure severe emotional distress as a result of watching a loved one suffer. 771 P.2d 814, 828 (Cal. 1989). In so holding, the California Supreme Court reasoned that "to allow recovery for emotional distress to those outside of the victim's immediate family would result in extending the scope of the negligent actors liability for emotional damages beyond what was reasonably foreseeable. *Elden*, 758 P.2d at 588.

However, a few jurisdictions take a broad view regarding the relationship between the victim of the negligence conduct and the plaintiff bystander. *See Dunphy v. Gregor* 642 A.2d 372, 380 (N.J. Sup. Ct. 1994) (permitting a fiancée to assert bystander emotional distress claim when she had been engaged to and cohabitated with deceased for two and a half years); *Graves v. Estabrook*, 818 A.2d 1255 (N.H. 2003) (allowing recovery for a woman who witnessed her fiancée killed in a motorcycle accident after living together for seven years); *Pieters v. B-Right Trucking, Inc.*, 669 F.Supp. 1463, 1467 (N.D. Ind. 1987) (permitting plaintiff to make an emotional distress claim resulting from the injuries and death of her fiancée); *Leong v. Takaskai*, 520 P.2d 758, 766 (HI, 1974) (allowing a child to bring a bystander claim after he witnessed his stepfather's mother get hit by a car because the court found the emotional and functional equivalent to a nuclear family relationship).

In *Dunphy*, the New Jersey Supreme Court expanded the term "intimate familial relationship"[4] to allow a plaintiff to assert a bystander emotional distress claim stemming from the accidental death of her fiancée with whom she cohabitated. *Dunphy*, 642 A.2d at 380. In *Dunphy* the plaintiff and the deceased were engaged, they were co-habitants, they purchased life insurance policies with each other as beneficiaries, maintained a joint checking account from which they paid their bills, and jointly purchased an automobile. *Dunphy*, 642 A.2d at 373. Commenting on the foreseeability of an unmarried, cohabitating bystander plaintiff, the *Dunphy* court explained, "Given the widespread reality and acceptance of unmarried cohabitation, a reasonable person wound not find the plaintiff's emotional trauma to be remote and unexpected." *Dunphy*, 642 A.2d at 377 (internal quotation omitted). The *Dunphy* court rejected the bright line rule stated in *Elden* and *Thing* regarding the bystander-victim relationship, holding that a jury can be tasked with evaluating the bystander-victim relationship. *Dunphy*, 642 A.2d at 378. The court reasoned that foreclosing an unmarried, cohabitating "plaintiff from making a claim based upon emotional harm because her relationship with the injured person does not carry a particular label is to work a potential injustice." *Id.*

Sound policy reasons support allowing a plaintiff like Arnott to recover based on a bystander emotional distress claim. The imposition of a duty in an emotional distress claim is the conclusion of a complex analysis that examines the relationship of the parties, the severity of the harm, and public policy considerations. *See Cameron*, 610 A.2d at 282 quoting *Trusiani v. Cumberland &*

---

[4] In New Jersey there must be a marital or intimate familial relationship between the plaintiff and the victim of the negligence. *Portee v. Jaffee*, 417 A.2d 521, 528 (N.J. Sup. Ct. 1980).

*York Distributors, Inc.*, 538 A.2d 258, 261 (Me. 1988); *see also Dunphy*, 642 A.2d at 376-77. The rule limiting bystander emotional distress claimants to family members is premised on the foreseeability of emotional harm experienced by certain plaintiffs who are closely related to the victims of negligent acts. The relationship between Arnott and Watts is similar to the relationship between the bystander and victim in *Dunphy*, with the principal difference being that Arnott and Watts are registered as domestic partners with the City of Portland and are not engaged. Arnott and Watts have cohabitated for eight years, they share joint bank accounts and household expenses, Watts is a beneficiary of Arnott's life insurance policy, and Arnott carries Watts on his health insurance and dental insurance policies. A reasonable factfinder could determine that Arnott's emotional distress was factually foreseeable. *Cameron*, 610 A.2d at 282-83. Without these facts, a less well-established relationship may not be sufficient for a plaintiff to make a claim for bystander emotional distress.

Therefore, the entry is:

> Liberty Mutual's motion to for summary judgment on Arnott's bystander emotional distress claim is DENIED.

Dated at Portland, Maine this ___/3rd___ day of ___July___, 2010.

_____
Robert E. Crowley
Justice, Superior Court

10

| Plaintiff's Attorney(s) | Defendant's Attorney(s) |
|---|---|
| JODI L NOFSINGER ESQ | Froderick Mouro, Esr. |