[No. 15356-8-III. Division Three. February 18, 1997.]

CHRISTINE HEGEL, *as Parent and Guardian*, ET AL., *Appellants*, v. BRETT M. MCMAHON, ET AL., *Respondents*.

*John R. Clark* and *Crary & Clark,* for appellants.

*Cheryl R.G. Adamson* and *Rettig, Osborne, Forgette & O'Donnell,* for respondents.

SCHULTHEIS, A.C.J. — Various members of the Hegel family arrived at the scene of a car accident and found Dale Hegel Sr. lying in a ditch by the road, seriously injured. Holding that family members must be present near the scene of the accident and observe its occurrence in order to bring claims for negligent infliction of emotional distress, we affirm the trial court's summary judgment dismissal of the Hegels' claims.

One day in October 1992, Dale Sr. pulled over to the side of the road when his car ran out of gasoline. As he stood pouring fuel in his tank, a car driven by Brett McMahon struck him and threw him into the ditch. Minutes after the impact, Dale Sr.'s son, Dale Hegel Jr., arrived in a car driven by his father's parents, Donald and Karna

Hegel. They found Dale Sr. covered with blood. Soon after, Dale Sr.'s brother and sister-in-law, Dean and Mary Hegel, happened to drive by, and also witnessed the accident scene. Dale Sr. sustained severe head injuries, leaving him permanently disabled and confined to a wheelchair. He and his wife settled all their claims against Mr. McMahon and his parents.

In November 1994, Dale Jr., his mother Christine (as guardian), Donald and Karna Hegel, Dean and Mary Hegel, and Donald Hegel Jr. filed suit against the McMahons for negligent infliction of emotional distress. In his answers to interrogatories, Dale Jr. stated the sight of his injured father made him angry and upset, gave him nightmares and prevented him from finishing high school. Donald and Karna Hegel answered that they reacted with "fear and panic" to the sight of their injured son. They also stated that driving by the accident site every day was very difficult for them. Dean and Mary Hegel described the hardships they shared with the family caring for Dale Sr. over the past couple of years.

The McMahons moved for summary judgment dismissal of all claims, arguing they owed no duty to family members who were not present at the time of the accident, and asserting the Hegels did not exhibit enough objective symptomatology of their mental distress. The Hegels then submitted amended responses to the interrogatories. In the amended response, Dale Jr. claimed the sight of his injured father caused him to suffer from sleeplessness, stomach pain and headaches severe enough to incapacitate him. He maintained he had to take "serious pain medicine" for these symptoms. The Donald Hegels reported in their amended response that Donald had suffered heart trouble and stomach and intestinal problems and that Karna was having severe headaches, stomach pains and nausea. Dean and Mary Hegel, like their relatives, claimed they had gone into a state of shock, resulting in severe stomach pain, vomiting, bad headaches and sleeplessness. All indicated that the sight of Dale Sr. lying in the ditch had changed their lives.

After examining all the interrogatories, the trial court ruled that *Gain v. Carroll Mill Co.*, 114 Wn.2d 254, 260-61, 787 P.2d 553 (1990) provided recovery for immediate family members who arrived on the scene, without warning, shortly after their relative was injured by the negligence of another. On this basis, Donald Hegel Jr.[1] and sister-in-law Mary Hegel were dismissed from the action. Citing *Hunsley v. Giard*, 87 Wn.2d 424, 553 P.2d 1096 (1976), the court also found that the family members must prove, with objective symptomatology, mental and emotional suffering. The court described the amended answers to interrogatories as self-serving, unsupported by medical evidence and merely contradictory to the earlier answers. Accordingly, the court found that the amended answers did not serve as sufficient evidence to support the Hegels' claims. The McMahons' motion for summary judgment was granted and the claims were dismissed with prejudice. This appeal followed.

 Because this is a review of a summary judgment, we engage in de novo review, considering all the evidence in the light most favorable to the Hegels. Summary judgment is appropriate if the pleadings and supporting documents show there are no issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). Assuming the Hegels came upon the scene of the accident within 5 or 10 minutes after Dale Sr.'s injuries, the pivotal question is whether they have claims for negligent infliction of emotional distress. We conclude they do not and affirm the judgment on this basis. *Sprague v. Sumitomo Forestry Co.*, 104 Wn.2d 751, 758, 709 P.2d 1200 (1985) (we will sustain the trial court's judgment on any theory supported by the record and the law).

The common law tort of negligent infliction of emotional

---

[1] Donald Jr. was dismissed because he only visited the accident scene after he was informed of the accident by telephone. The summary judgment dismissal of his case was not appealed.

distress was first recognized in Washington in *Hunsley*, 87 Wn.2d 424. Even this seminal case, which determined that a cause of action existed for negligent infliction of emotional distress, also recognized that limitations must be put on recovery. *Hunsley*, 87 Wn.2d at 435. In *Gain*, 114 Wn.2d at 257-58, the Supreme Court asked the question before us today: Must a plaintiff be physically present and witness the accident before he or she has a claim for emotional distress caused by the negligent injury of a family member? *Gain* concluded that "mental suffering by a relative who is not present at the scene of the injury-causing event is unforeseeable as a matter of law." *Id.* at 260. Later in the opinion, however, the court extended the defendant's duty further: "Mental distress where the plaintiffs are not present at the scene of the accident *and/or arrive shortly thereafter* is unforeseeable as a matter of law." *Id.* at 261 (emphasis added).

As Justice Brachtenbach asks in his dissent to *Gain*, "what does 'shortly thereafter' mean? What magic elapse of time will be the dividing line? Yes, to the plaintiff who arrives 5 minutes later, but no, to the father who arrives 10, 20, or 30 minutes later?"[2] *Gain*, 114 Wn.2d at 266 (Brachtenbach, J., dissenting). Subsequent cases have mostly ignored the language extending coverage to those who arrive after the accident. For instance, the Supreme Court recently noted that *Gain* disallowed mental distress damages "even to close family members, when they were not present at the scene of a fatal accident." *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 321, 858 P.2d 1054 (1993). *Fisons* also cited *Schurk v. Christensen*, 80 Wn.2d 652, 656, 497 P.2d 937 (1972), which applied the test used by *Dillon v. Legg*, 68 Cal. 2d 728, 740, 441 P.2d 912, 69 Cal. Rptr. 72, 29 A.L.R.3d 1316 (1968) to determine whether the negligent tort-feasor owes a duty of care: (1) Was the plaintiff near the scene of

---

[2]Justice Brachtenbach proposed leaving the issue of foreseeability, as it relates to duty, to the jury. *Gain*, 114 Wn.2d at 263-64 (Brachtenbach, J., dissenting).

the accident, (2) did the plaintiff receive a shock from a contemporaneous observance of the accident, and (3) were the plaintiff and the victim closely related? *Fisons*, 122 Wn.2d at 321 n.25.

■ Recent federal cases addressing negligent infliction of emotional distress have included Washington in the states that have adopted the "bystander proximity" rule. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S. Ct. 2396, 2407, 129 L. Ed. 2d 427 (1994); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1409 (9th Cir. 1994). The rule, adopted verbatim from *Dillon*, 68 Cal. 2d at 740, requires that the family member be present near the accident and observe its occurrence. *Consolidated Rail*, 114 S. Ct. at 2407; *Chan*, 39 F.3d at 1409. Both *Consolidated Rail* and *Chan* cite *Gain* for the rule that the plaintiff must personally witness the injury or death of a family member. *Consolidated Rail*, 114 S. Ct. at 2407 n.10; *Chan*, 39 F.3d at 1409. *See also Lindsey v. Visitec, Inc.*, 804 F. Supp. 1340, 1344 (W.D. Wash. 1992). As *Chan* notes, none of the theories limiting recovery for emotional distress allow recovery when the plaintiff is not present and has not observed the accident. *Chan*, 39 F.3d at 1409-10.

In summary, although *Gain* appears to extend the class of plaintiffs who may seek damages for negligent infliction of emotional distress, later cases have declined to allow recovery for plaintiffs who were not present near the scene and did not actually observe the injury-causing accident. *Chan*, 39 F.3d at 1409-10; *Lindsey*, 804 F. Supp. at 1344; *Fisons*, 122 Wn.2d at 321. The early Washington cases contemplating establishment of a tort for negligent infliction of mental distress cautioned that protection must be limited due to "(1) the likelihood that courts will be flooded by fraudulent claims and (2) the defendant's potentially unlimited liability for every type of mental disturbance." *Schurk*, 80 Wn.2d at 655 (quoting *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509, 519 (1970)). In light of our courts' historical reluctance to extend the class of plaintiffs who may recover emotional distress damages, we hold that, as

a matter of law, only plaintiffs who are present near the accident scene and observe the injury-producing event may recover for emotional distress.[3]

Although each of the immediate family members arrived soon after the injuries to Dale Sr. occurred, none witnessed the accident. Family members who suddenly arrive and find a loved one seriously injured naturally suffer extreme emotional pain. But a reasonable limit must be made in order to avoid unlimited liability. *Gain*, 114 Wn.2d at 260. As opposed to the shock and distress a plaintiff feels when he or she witnesses injury to an immediate family member, *Gain* notes that the "mental distress suffered by plaintiffs not present at the scene of the accident is more akin to the anguish that any person feels after being informed of death or injury to a loved one." *Id.* We also note that the trial court was correct in limiting recovery to "immediate family," defined as spouses, children, stepchildren, parents and siblings. *Shoemaker v. St. Joseph Hosp. & Health Care Ctr.*, 56 Wn. App. 575, 580, 784 P.2d 562 (citing *Strickland v. Deaconess Hosp.*, 47 Wn. App. 262, 268-69, 735 P.2d 74, *review denied*, 108 Wn.2d 1028 (1987)), *review denied*, 114 Wn.2d 1025 (1990). Accordingly, the trial court properly dismissed sister-in-law Mary Hegel.

In light of our holding, we do not reach the Hegels' argument that they provided sufficient objective evidence of their symptoms to avoid summary judgment.

Affirmed.

KURTZ and BROWN, JJ., concur.

Review granted at 133 Wn.2d 1001 (1997).

---

[3]Even the case cited by the trial court to support its decision, *Thing v. La Chusa*, 48 Cal. 3d 644, 668, 771 P.2d 814, 257 Cal. Rptr. 865 (1989), unequivocally states that a plaintiff must have been "present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim."