960 P.2d 424 (1998)
136 Wash.2d 122
Christine HEGEL, as parent and natural guardian for Dale Hegel, Jr., a minor child; and Kama and Donald Hegel, Sr., wife and husband; Dean Hegel and Mary Hegel, husband and wife; and Donald Hegel, Jr., Petitioners,
v.
Brett M. McMAHON; and Michael McMahpn and Jane Doe McMahon, husband and wife, and the marital community composed thereof, Respondents.
Barton P. MARZOLF, Sr., individually, and as Personal Representative of the Estate of Jeremy A. Marzolf, Petitioner,
v.
Bonnie Rae STONE, individually, and John Doe Stone, her husband, and the marital community composed thereof; Snohomish School District No. 201, a municipal corporation; Snohomish County, a municipal corporation; John Does 1-3, Respondents.
Nos. 65105-I, 65218-0.
Supreme Court of Washington, En Banc.
Argued March 10, 1998.
Decided August 20, 1998.
*425 De Funis & Balint, David Balint, Marco De Funis, Seattle, for Petitioner Marzolf.
Crary & Clark, John R. Clark, Spokane, for Petitioner Hegel.
Rettig, Osborne, Forgette, O'Donnell, Iller & Adamson, Cheryl Adamson, Kennewick, for Respondent McMahon.
Jim Krider, Snohomish County Prosecutor, Alfred Gehri, Deputy Snohomish County Prosecutor, Everett, Tim Dore, Bellevue, Peery, Hiscock, Pierson, Kingman & Peabody, John C. Gibson, Max Peabody, Seattle, for Respondents Snohomish County and Stone.
DURHAM, Chief Justice.
Plaintiffs in these consolidated cases seek to recover for emotional trauma they experienced after witnessing the suffering of an injured family member at the scene of an accident. Their claims below were dismissed because the Plaintiffs were not present when the accidents occurred. We reverse and hold that Plaintiffs may recover for emotional distress caused by observing an injured relative at the scene of an accident shortly after its occurrence and before there is substantial change in the relative's condition or location.

FACTS
Hegel v. McMahon
Dale Hegel ran out of gas and pulled over to the side of a road. As he poured gasoline into his tank, a passing car struck him and knocked him into a ditch. Dale Hegel's son and parents were driving along the same *426 road and came upon the scene after the accident. They discovered him lying in the ditch, severely injured and bleeding from his nose, ears, and mouth. A few minutes later, Dale Hegel's brother and sister-in-law also came upon the scene and observed him in the ditch.
Dale Hegel suffered severe and permanent head injuries. He and his wife have settled all claims against the driver. The Hegel family members who came upon the accident scene sued the driver on their own behalf for negligent infliction of emotional distress. They alleged that the sight of Dale Hegel's injured body in the ditch put them in a state of fear and panic and that they continue to suffer from anxiety and shock.
The Defendants moved for summary judgment, asserting that they owed no duty to the Hegels and that the Hegels' interrogatory answers did not allege sufficient objective symptoms of mental distress. The Hegels sought to amend their interrogatory answers to include physical ailments caused by their emotional distress, but the trial court refused to consider the amended answers because they contradicted the Hegels' previous answers and were unsupported by medical evidence. The court then dismissed the case on the grounds that the Hegels failed to show sufficient objective symptoms of emotional distress. The Court of Appeals affirmed the summary judgment, but did not examine the sufficiency of the symptoms. Instead, the court ruled that a plaintiff must actually witness the injury causing accident in order to state a cause of action for negligent infliction of emotional distress. Hegel v. McMahon, 85 Wash.App. 106, 112, 931 P.2d 181 (1997). The plaintiffs petitioned for discretionary review in this court.
Marzolf v. Stone
Nineteen-year-old Jeremy Marzolf was killed when his motorcycle collided with a school bus. Jeremy's father, Barton Marzolf, happened upon the scene within 10 minutes of the collision, before emergency crews arrived. He saw his son on the ground, still conscious, but "his leg was cut off, hand he was about split in half." Br. of Pet'r at 2. Jeremy died soon afterward.
Barton Marzolf filed suit for wrongful death and negligent infliction of emotional distress against Snohomish County, the school district, and the driver of the bus. The Defendants moved to dismiss the emotional distress claim on the grounds that Mr. Marzolf was not at the scene when the accident occurred. Initially, the trial court denied the motion, but when the Court of Appeals issued its decision in Hegel, the County moved for reconsideration. After considering Hegel, the trial court granted the motion to dismiss. Marzolf petitioned this court for review and the two cases were consolidated.

ANALYSIS
Bystander negligent infliction of emotional distress claims involve emotional trauma resulting from one person's observation or discovery of another's negligently inflicted physical injury. Washington restricts the class of bystander negligent infliction of emotional distress plaintiffs to those who were present at the scene of the accident, Gain v. Carroll Mill Co., 114 Wash.2d 254, 260, 787 P.2d 553 (1990), and requires that plaintiffs demonstrate objective symptoms of their emotional injury. Hunsley v. Giard, 87 Wash.2d 424, 436, 553 P.2d 1096 (1976). The parties ask us to decide whether plaintiffs must actually be at the scene at the time of the accident, and what is necessary to sufficiently allege objective symptoms of their distress.

I.
Washington first recognized a bystander negligent infliction of emotional distress cause of action in Hunsley. In that case, the defendant negligently drove her car into the plaintiff's home. The plaintiff was not injured, but after the accident she experienced heart trouble which was later diagnosed as having resulted from severe mental stress. Hunsley, 87 Wash.2d at 425, 553 P.2d 1096. The court allowed the claim for negligent infliction of emotional distress, dispensing with the previous limiting requirement that the plaintiff be within the zone of danger. Instead, the court evaluated the claim based on the general tort principles of duty and foreseeability. If the specific harm alleged *427 by the plaintiff was foreseeable to the defendant, he had a duty to avoid it and could be held liable. Hunsley, 87 Wash.2d at 434-35, 553 P.2d 1096.
More than 10 years after Hunsley first allowed a claim for bystander negligent infliction of emotional distress, the Court of Appeals reasoned that a liability scheme that was limited by foreseeability alone was contrary to public policy. Cunningham v. Lockard, 48 Wash.App. 38, 736 P.2d 305 (1987). The plaintiffs in Cunningham were the minor children of a mother who was struck by a car. The children neither witnessed the accident, nor came upon the scene shortly after its occurrence. The Court of Appeals held as a matter of law that the children could not recover for emotional distress. The Court of Appeals explained that Hunsley`s foreseeability approach did not set an adequate limit to the scope of a defendant's legal liability. "[T]he decision subjects defendants to potentially unlimited liability to virtually anyone who suffers physical manifestations of emotional distress ... Because of this virtually unlimited liability, a boundary establishing the class of persons who can sue must be drawn." Cunningham, 48 Wash.App. at 44, 736 P.2d 305. Thus, Cunningham held that negligent infliction of emotional distress claims should be limited to claimants who were present at the time the victim was imperiled by the defendant's negligence.
This court revisited the issue in Gain v. Carroll Mill Co., 114 Wash.2d 254, 787 P.2d 553 (1990). In Gain, we recognized that Hunsley`s foreseeability approach might allow for an overly expansive allocation of fault, and acknowledged the need for an outer limit to liability. In Gain, the plaintiff learned of his son's death when he viewed television news coverage of the fatal accident. The plaintiff sued the driver of the car that caused the accident. The court held that a plaintiff who viewed an accident on television may not bring a claim for negligent infliction of emotional distress. The court reasoned that such emotional injury is unforeseeable as a matter of law where the family member was not present at the scene of the accident. Gain, 114 Wash.2d at 255, 787 P.2d 553.
We agree with the Court in Cunningham, that unless a reasonable limit on the scope of defendants' liability is imposed, defendants would be subject to potentially unlimited liability to virtually anyone who suffers mental distress caused by the despair anyone suffers upon hearing of the death or injury of a loved one. As one court stated:
"`It would surely be an unreasonable burden on all human activity if a defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it....'"
Gain, 114 Wash.2d at 260, 787 P.2d 553 (quoting Budavari v. Barry, 176 Cal.App.3d 849, 855, 222 Cal.Rptr. 446 (1986) (quoting Scherr v. Hilton Hotels Corp., 168 Cal.App.3d 908, 214 Cal.Rptr. 393 (1985))).[1]
Although Gain recognized that specific limitations must be placed on the foreseeability standard, the court did not embrace Cunningham`s rule that a claimant must be present at the time of the accident. Instead, the court balanced the interest in compensating the injured party against the view that a negligent act should have some end to its legal consequences. The court held that mental suffering by a relative "who is not present at the scene of the injury-causing event is unforeseeable as a matter of law." The court later concluded that plaintiffs must be "physically present at the scene of the accident or arrive shortly thereafter. Mental distress where the plaintiffs are not present at the scene of the accident and/or arrive shortly thereafter is unforeseeable as a matter of law." Gain, 114 Wash.2d at 261, 787 P.2d 553.
*428 The significance of the phrase "shortly thereafter" in Gain is the center of the controversy in this case. The Court of Appeals below did not give effect to the "shortly thereafter" language. Instead, the court followed the lead of the Court of Appeals in Cunningham by holding that only plaintiffs who are present at the accident scene and observe the injury-causing event may recover for emotional distress. Hegel, 85 Wash.App. at 112, 931 P.2d 181. In its analysis, the court noted that later decisions have largely "ignored" our language in Gain that allows a cause of action to those who arrive shortly after an accident. Hegel, 85 Wash.App. at 110, 931 P.2d 181. The Court also referred to recent federal decisions that characterized Washington law as requiring that a plaintiff personally witness the injury or death of a family member in order to recover for negligent infliction of emotional distress. Hegel, 85 Wash.App. at 111, 931 P.2d 181 (citing Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 114 S.Ct. 2396, 2407, 129 L.Ed.2d 427 (1994); Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1409 (9th Cir.1994)).
Contrary to the position of the Court of Appeals, Gain does not limit negligent infliction of emotional distress claims to those who actually witness the injury-causing event. The Court of Appeals relies on Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 858 P.2d 1054 (1993) for the proposition that this court has ignored the "shortly thereafter" language in Gain. However, Fisons does not involve bystander recovery for emotional trauma caused by witnessing an injured family member at the scene of an accident. Fisons is a product liability case and cites to Gain only for the principle that emotional distress damages caused by witnessing a third party's injuries are compensable under limited circumstances. Fisons repeats Gain's holding that a plaintiff must be present at the scene of the accident in order to recover for emotional distress, but never discusses the specific issue of whether a plaintiff must be at the scene at the time of the accident in order to recover, or whether he may arrive after the accident has occurred. Fisons, 122 Wash.2d at 320-21, 858 P.2d 1054.
Likewise, the Court of Appeals placed undue emphasis on Consolidated Rail and Chan. Although those cases have characterized Washington as requiring a plaintiff to personally witness the injury of a family member, other jurisdictions have characterized Washington as a state that allows recovery where the plaintiff arrives at the scene shortly after the accident. See Clohessy v. Bachelor, 237 Conn. 31, 43-44, 675 A.2d 852, 859 (1996); Sorrells v. M.Y.B. Hospitality Ventures, 334 N.C. 669, 675, 435 S.E.2d 320, 324 (1993) (Meyer, J., concurring in result); see also Elizabeth Handsley, Mental Injury Occasioned by Harm to Another: A Feminist Critique, 14 Law & Ineq. J. 391, 418 (1996).
We will not ignore the "shortly thereafter" language in Gain. Prior to Gain, negligent infliction of emotional distress claims were limited only by general tort principles. Hunsley, 87 Wash.2d at 434-36, 553 P.2d 1096. Gain narrowed the cause of action by requiring a plaintiff to be present at the accident scene in order to recover. Gain did not further restrict liability by mandating that the plaintiff be present at the time of the accident, nor did it foreclose a cause of action for a plaintiff who arrives on the scene after the accident has occurred and witnesses the victim's suffering. Furthermore, Gain cited as comporting with its holding several jurisdictions that allow recovery when the plaintiff arrives shortly after the accident. Gain, 114 Wash.2d at 260, 787 P.2d 553 (citing Nancy P. v. D'Amato, 401 Mass. 516, 517 N.E.2d 824 (1988); Croft v. Wicker, 737 P.2d 789 (Alaska 1987); Gates v. Richardson, 719 P.2d 193 (Wyo.1986); Ochoa v. Superior Court, 39 Cal. 3d 159, 703 P.2d 1, 216 Cal.Rptr. 661 (1985)). Gain's choice of authority suggests that the court did not intend to limit recovery to those who actually witness the accident.
A bright line rule that limits recovery for emotional distress to those who witnessed the accident is attractive in its simplicity. However, it draws an arbitrary line that serves to exclude plaintiffs without meaningful distinction. The emotional trauma caused by seeing a loved one injured at an accident scene stems not merely from witnessing the *429 transition from health to injury, but also from witnessing the aftermath of an accident in all its alarming detail. The Wyoming Supreme Court explained in Gates v. Richardson,) 719 P.2d at 199:
The essence of the tort is the shock caused by the perception of an especially horrendous event.... The kind of shock the tort requires is the result of the immediate aftermath of an accident. It may be the crushed body, the bleeding, the cries of pain, and, in some cases, the dying words which are really a continuation of the event. The immediate aftermath may be more shocking than the actual impact.
(Citation omitted.)
Allowing recovery only to those who were present at the time of the injury-causing event creates an arbitrary distinction. Gain limited recovery to those plaintiffs who were present at the scene of the accident. We will not further restrict recovery by requiring that a plaintiff actually be present at the time of the accident. However, although we must reject artificial lines that serve only to restrict the number of plaintiffs, not every act that causes harm results in legal liability. Hunsley, 87 Wash.2d at 434, 553 P.2d 1096. The challenge is to create a rule that acknowledges the shock of seeing a victim shortly after an accident, without extending a defendant's liability to every relative who grieves for the victim. In his Gain dissent, Justice Brachtenbach identified the difficulty in pinpointing the limit to a defendant's liability. "[W]hat does `shortly thereafter' mean? What magic elapse of time will be the dividing line? Yes, to the plaintiff who arrives 5 minutes later, but no, to the father who arrives 10, 20, or 30 minutes later?" Gain, 114 Wash.2d at 266, 787 P.2d 553. An appropriate rule should not be based on temporal limitations, but should differentiate between the trauma suffered by a family member who views an accident or its aftermath, and the grief suffered by anyone upon discovering that a relative has been severely injured.[2]
Other jurisdictions have developed a wide spectrum of rules to define liability for negligent infliction of emotional distress. Alaska has allowed a mother to bring a claim where she saw her injured daughter at the hospital after the accident. See Beck v. State Dep't of Transp. & Pub. Facilities, 837 P.2d 105 (Alaska 1992). Maine holds that a defendant is only liable for emotional distress that arises when parents actually witness their child receiving an injury. See Cameron v. Pepin, 610 A.2d 279, 284 (Me.1992). Connecticut and Wyoming have adopted a principled intermediate approach which limits the scope of liability, yet still allows recovery to those plaintiffs who witness their relative's injuries at the scene of an accident. These states recognize a cause of action where a plaintiff witnesses the victim's injuries at the scene of an accident shortly after it occurs and before there is material change in the attendant circumstances. See Clohessy v. Bachelor, 237 Conn. 31, 675 A.2d 852 (1996); Gates v. Richardson, 719 P.2d 193 (Wyo.1986). This rule addresses the concerns over limitless liability by allowing recovery only to the class of claimants who are present at the scene before the horror of the accident has abated. It dispenses with the arbitrary requirement that a plaintiff actually witness the accident, yet preserves the limitation on liability established in Gain. The critical factors are the circumstances under which the observation is made, and not any rigid adherence to the length of time that has passed since the accident.
We adopt this approach and hold that a family member may recover for emotional distress caused by observing an injured relative at the scene of an accident after its occurrence and before there is substantial change in the relative's condition or location. Applying this rule to the facts of these cases, we conclude that it was improper for the lower courts to dismiss the Plaintiffs' claims for negligent infliction of emotional distress. Because Plaintiffs in both cases were present at the scene, and may have witnessed their family members' suffering before there was a *430 substantial change in the victim's condition or location, their mental distress was not unforeseeable as a matter of law.

II.
The defendants in Hegel also challenge the sufficiency of the Hegels' objective symptoms of emotional distress. In order to recover for negligent infliction of emotional distress, a plaintiff's emotional response must be reasonable under the circumstances, and be corroborated by objective symptomology. Hunsley, 87 Wash.2d at 436, 553 P.2d 1096. In their original interrogatory answers, the Hegels alleged they felt scared, angry, upset, suffered nightmares, and felt fear and panic. The trial court relied on Shoemaker v. St. Joseph Hosp. & Health Care Ctr., 56 Wash.App. 575, 784 P.2d 562 (1990) and held that these complaints were insufficient to satisfy Hunsley's objective symptomology requirement. In doing so, the trial court implicitly incorporated Shoemaker's rule that objective symptomology requires some sort of physical manifestation of the emotional distress.[3] We disagree.
Shoemaker held that a plaintiff who had sleep disorders, nightmares, tearful outbursts, low energy level, and recurrent intrusive memories did not exhibit sufficient objective symptomology. The court stated that emotional distress must be "`manifested by objective symptomatology', i.e., `physical symptoms evidencing and resulting from the emotional distress.'" Shoemaker, 56 Wash.App. at 581, 784 P.2d 562 (quoting Hunsley v. Giard, 87 Wash.2d at 433, 436, 553 P.2d 1096). However, Shoemaker quoted Hunsley's reference to physical symptoms out of context. Hunsley did not equate objective symptomology with physical manifestations. Instead, the court explicitly stated that it would not rule on the issue of whether physical symptoms were required.
Our decision necessarily is predicated upon the existence of physical symptoms evidencing and resulting from the emotional distress. We say that this is necessarily so because these are the facts of this case. Plaintiff suffered physical heart damage as well as emotional distress. Whether there is liability for emotional distress unmanifested by any physical symptoms must be determined in another case.
Hunsley, 87 Wash.2d at 433-34, 553 P.2d 1096.[4]
Hunsley's objective symptomology limitation is valuable as corroborating evidence to fend off fraudulent claims. However, uncorroborated allegations of physical manifestations cannot serve to further this goal. Rather, they are the epitome of subjective symptoms: unverified assertions of pain that have not been supported by outside evidence or authoritative testimony.
Requiring physical manifestations of emotional distress severely and irrationally limits the types of symptoms that would be sufficient to prove a claim. Such a requirement would encourage exaggerated pleading and discount the reliability of psychiatric testimony. This approach has been extensively criticized in other jurisdictions. See Paugh v. Hanks, 6 Ohio St.3d 72, 78, 451 N.E.2d 759, 765 (1983) ("[A] rigid requirement which prevents a plaintiff from recovering from serious emotional harm except where a physical injury manifestation has ensued, completely ignores the advances made in modern medical and psychiatric science ..."); Folz v. State, 110 N.M. 457, 470, 797 P.2d 246, 259 (1990) (illogical to require as a threshold element the presence of physical injury to manifest the emotional trauma); Leong v. Takasaki, 55 Haw. 398, 403, 520 P.2d 758, 762, 94 A.L.R.3d 471 (1974) (physical injury requirement is artificial and should only be used to show degree of emotional distress); Culbert v. Sampson's Supermarkets Inc., 444 A.2d *431 433, 438 (Me.1982) (proof of physical manifestations of the mental injury is no longer required); Heldreth v. Marrs, 188 W.Va. 481, 490, 425 S.E.2d 157, 166 (1992) (emotional distress can be severe and debilitating even absent physical manifestations of the emotional injury).
Restricting recovery to only those plaintiffs who experience some sort of physical ailment may disqualify seriously injured plaintiffs, while doing nothing to restrict fraudulent claims. Serious emotional distress can be diagnosed even in the absence of any physical manifestation, and can be proved with medical and psychiatric evidence. See Sorrells v. M.Y.B. Hospitality Ventures, 334 N.C. 669, 672, 435 S.E.2d 320, 322 (1993) ("[P]laintiff must show an `emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally diagnosed by professionals trained to do so.'") (quoting Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)); Lejeune v. Rayne Branch Hosp., 556 So.2d 559, 570 (La.1990) ("Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating.... A non-exhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia and shock.").
We hold that to satisfy the objective symptomology requirement established in Hunsley, a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical evidence.[5] This approach calls for objective evidence regarding the severity of the distress, and the causal link between the observation at the scene and the subsequent emotional reaction. Thus, contrary to the holding of the Court of Appeals in Shoemaker, nightmares, sleep disorders, intrusive memories, fear, and anger may be sufficient. However, in order for these symptoms to satisfy the objective symptomology requirement, they must constitute a diagnosable emotional disorder.
After the defendants moved for summary judgment, the Hegels attempted to amend their interrogatory answers to further explain their symptomology. The Hegels focused their efforts on presenting physical manifestations of their emotional harm. Given our rejection of the Shoemaker standard, we remand the Hegels' case to the trial court for a decision on whether the Hegels should be allowed to amend their pleadings or supplement their discovery in light of our holding.

CONCLUSION
It is not necessary for a bystander to be present at the time of the injury-causing event in order to state a claim for negligent infliction of emotional distress. A family member may recover for emotional distress if he or she arrives at the scene shortly after the accident before substantial change has occurred in the victim's condition or location. The plaintiff's emotional distress must be reasonable, and the plaintiff must present objective symptoms of the distress that are susceptible to medical diagnosis and proved through qualified evidence.
Both the Hegels and Mr. Marzolf were present at the scene of the accident. The fact that both arrived in time to witness only the suffering, not the infliction of injury on their relatives, does not preclude their claims. Furthermore, the Hegels' emotional symptoms of distress may be sufficient if they can be diagnosed and proved through medical evidence. We remand both cases to the trial court for further proceedings.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] See also Robert L. Rabin, Tort Recovery for Negligently Inflicted Economic Loss: A Reassessment, 37 Stan. L.Rev. 1513, 1526 (1985) ("Foreseeability proves too much.... Although it may set tolerable limits for most types of physical harm, it provides virtually no limit on liability for nonphysical harm."); Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 553, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) ("If one takes a broad enough view, all consequences of a negligent act, no matter how far removed in time or space, may be foreseen. Conditioning liability on foreseeability, therefore, is hardly a condition at all.").
[2] For example, for purposes of diagnosing posttraumatic stress disorder, a traumatic event is one where a person experiences or witnesses actual or threatened physical injury or death, and has a response that involves "intense fear, helplessness, or horror." See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 428 (4th ed.1994).
[3] Both parties in this case also appear to equate objective symptomology with physical symptoms of distress.
[4] Other courts have not read Hunsley to require physical manifestations of emotional distress. See Lindsey v. Visitec, Inc., 804 F.Supp. 1340, 1342-43 (W.D.Wash.1992) ("[T]he objective symptomatology requirement of Hunsley is not limited to purely physical manifestations such as gastrointestinal disorders, as defendants assert. The requirement is only that the manifestations be objective in nature. Depression, sleeplessness, loss of weight, and social and professional dysfunction impairment are all objective symptoms.").
[5] We agree with Sorrells v. M.Y.B. Hospitality Ventures, 334 N.C. 669, 672, 435 S.E.2d 320, 322 (1993) and Lejeune v. Rayne Branch Hosp., 556 So.2d 559, 570 (La.1990) that examples of emotional distress would include neuroses, psychoses, chronic depression, phobia, shock, post traumatic stress disorder, or any other disabling mental condition.