IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ELSIE FLEMMER, | ) | No. 31270-4-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| REGENCY PACIFIC, INC., a Washington | ) | |
| corporation, d/b/a REGENCY AT THE | ) | |
| PARK; and JONATHAN OWENS, an | ) | |
| individual, | ) | |
| | ) | |
| Respondents. | ) | |

KULIK, J. — This is a dispute between Elsie Flemmer and Regency at The Park, a skilled nursing facility. Ms. Flemmer, a former resident of Regency, disputed the amount Regency billed for her 18-month stay. Regency identified mistakes in Ms. Flemmer's account, but determined that she still had an outstanding balance. Litigation ensued. On Regency's motion for summary judgment, the trial court dismissed Ms. Flemmer's claims for breach of contract; breach of an implied covenant of good faith and fair dealing; violation of the Consumer Protection Act (CPA), chapter 19.86 RCW; and negligent infliction of emotional distress. Ms. Flemmer appeals.

We affirm summary judgment in favor of Regency on all claims except we reverse summary judgment on the breach of contract and negligent infliction of emotional distress claims and remand for trial on those claims. We do so without prejudice to appellant to permit renewal of her motion to amend.

## FACTS

In August 2008, Elsie Flemmer moved into Regency at The Park, a skilled nursing facility. Ms. Flemmer signed an admission agreement, which described the care to be provided and the payment terms. Regency promised to provide room and board, nursing care, dietary services, an activity program, and related social services, which were all included in the basic daily rate. Services available at Regency, but not included in the daily room rate, included medical supplies, physical and occupational therapy, professional services, and medication.

The payment terms required the resident to make payments on or before the 10th of each month. The resident was responsible for prompt and full payment of all fees and charges, except for those covered by Medicare and Medicaid. The admission agreement allowed Regency to prebill Medicare coinsurance to the resident, but other charges covered by Medicare and Medicaid were billed at the end of the month in which the charges were incurred. Under a section entitled "Medicare Coverage," the agreement

2

states that "the resident is responsible for paying the Medicare co-insurance rate (commonly known as co-payment). If the resident has supplemental insurance, the facility will assist in billing the insurance company. Currently the Medicare Co-insurance rate is **$124.00** per day." Clerk's Papers (CP) at 25. Ms. Flemmer authorized Regency to bill her Regence Blue Shield supplemental insurance, with payments being made directly to Regency. Ms. Flemmer also allowed Regency to disclose her health information for insurance billing and collection purposes.

Rates at Regency varied depending on the type of room and the services provided in that room. The admission agreement contemplated changes to the daily room and board rate. If rates were to change, Regency was required to give the resident 30 days' advance notice of the changes. During Ms. Flemmer's stay, Regency's room rate was $225 per day from August 2008 to January 2009, $240 per day for February 2009 to December 2009, and $252 per day for January 2010 until the end of Ms. Flemmer's stay.

Regency's accounting department kept separate accounting systems for private payment and insurance payment. Amounts owed by residents for room and board, coinsurance, and other expenses not covered by insurance were considered "private payor" expenses and were logged in the private payment account, while amounts paid by insurance were "insurance payor" expenses and listed in the insurance payment account.

3

The amount due on the private payment account was determined by the amount covered in the insurance payment account. However, insurance expenses and credits did not show on Ms. Flemmer's private payment monthly statements. Her statement billed only the amount she owed.

Further complicating matters, Regency went through a change in ownership in January 2010. The residents were issued a new account number. However, amounts due from the old account were not carried over to the new account because the new owners did not purchase the rights to the accounts receivable. Thus, residents had two separate account numbers.

Regency provided room and board and other services to Ms. Flemmer from August 8, 2008, to February 25, 2010, except for approximately 34 days that she spent in the hospital. Upon first arriving at Regency, Ms. Flemmer was gravely ill and on hospice care. However, she recovered after having a knee replacement and a foot amputated. She was able to leave the nursing facility in 2010. Initially, Ms. Flemmer was not eligible for Medicare but had private insurance. Regency billed Ms. Flemmer as a private payor.

It is undisputed that Regency made several errors in Ms. Flemmer's account that led to confusion on the amount Ms. Flemmer owed both during her stay and after she left Regency. As an example cited by Regency, accounting personnel mistakenly posted

4

payments from Ms. Flemmer's insurance company to the "private payor" side of the accounting system, leading to the appearance that Ms. Flemmer had overpaid the account. Also, this payment should have been credited under the old account number instead of her new account number.

During her stay, Ms. Flemmer alerted Regency to the discrepancies in her bill. She approached employees of Regency in an effort to resolve questions about her bill. The billing issues were not resolved at the time Ms. Flemmer left Regency in February 2010.

In February 2011, Regency's field accounting supervisor, John Krise, created a manual bill summarizing the charges to Ms. Flemmer. The manual bill included charges for room and board only for 8/20/08 to 3/12/09 and 7/16/09 to 8/11/09. Then, from the period between 3/27/09 to 6/30/09 and 8/19/09 to 8/31/09, the manual bill's charges are entitled "Co-Insurance." CP at 93. The coinsurance charges are not itemized. For the remaining dates, from 9/10/09 to 2/25/10, the manual bill lists charges by category for room and board, pharmacy, and medical supplies. The bill lists payments/credits made to Ms. Flemmer's account, but does not indicate whether the payment came from Ms. Flemmer personally or from insurance. In total, the manual bill shows Ms. Flemmer owing Regency $10,367.79.

Ms. Flemmer initiated litigation against Regency in July 2011. Regency filed its answer and counterclaim on August 12. Ms. Flemmer did not file an answer to Regency's counterclaim. The parties exchanged discovery between October 2011 and August 2012.

Regency filed a motion for summary judgment on July 16, 2012. On August 21, six days prior to the summary judgment hearing, Ms. Flemmer filed a motion to amend her complaint. The trial court heard the two motions on August 27.

In its motion in support of summary judgment, Regency filed the declarations of Mr. Krise and Jonathan Owens, a director at Regency during Ms. Flemmer's stay. Mr. Krise contended Ms. Flemmer was entitled to hospice for a portion of her stay, but that generally hospice does not cover room and board expenses. Also, Ms. Flemmer was not entitled to Medicare or Medicaid while at Regency. Mr. Krise noted that Regency dropped several charges disputed by Ms. Flemmer in an effort to resolve the disagreement.

Mr. Owens stated that he met with Ms. Flemmer in January 2010 to discuss the outstanding balance on her account. He told Ms. Flemmer that Regency would conduct an audit of the account and, upon completion, any monies owed by either party would be paid. He also asked her to pay $45,000 to bring her account current. He noted that the

encounter was pleasant. He also noted that Ms. Flemmer approached him at other times with questions about her bill, and that he referred her to Regency accountant Cindy Gies, who was researching Ms. Flemmer's account. He said that he made repeated efforts to work with Ms. Flemmer and accommodate her requests.

Ms. Gies was assigned by Regency's corporate office to investigate the account and give recommendations for a resolution. Mr. Owens recounted a conversation with Ms. Gies. Ms. Gies approached him with concerns that a former office manager had not correctly billed Ms. Flemmer's account. Specifically, she referenced Regency's contract with hospice and her belief that Regency had improperly billed with respect to the hospice-related expenses. He encouraged Ms. Gies to speak with an accounting supervisor. Although he noted that he was bemused with her interpretations of the hospice contract, he was not angry with her or Ms. Flemmer.

In opposition to summary judgment, Ms. Flemmer filed a declaration stating her version of events. She contended that she provided her health insurance information to Regency and understood that they would bill her insurance. Ms. Flemmer's brother told Regency that Ms. Flemmer's insurance covered her hospice care. Once she noticed that no insurance payments were being recorded on her bill, she contacted a Regency accountant. Regency refused to bill her insurance. Ms. Flemmer states that it was

impossible to reconcile her bills from Regency and that she was unaware of Regency's separate billing systems. She asked several Regency employees for an itemized bill, but never received one. She maintains that the amounts shown on her explanation of benefits from her insurance company did not match Regency's billing rate for room and board. She continued to ask for accurate, up-to-date bills.

According to Ms. Flemmer, she became eligible for Medicare assistance in October 2009, but Regency did not submit any bills until April 2010. She also contends that her insurance covered certain medications from June 2009 to December 2009, but she could not be sure that Regency credited her for the costs of the medication because her bill contained a generic monthly charge for pharmacy. Ms. Flemmer was unsure why the amount of the pharmacy charges widely varied, charging $13,000 in one month and $1,211 two months later. Ms. Flemmer claimed that Regency improperly coded pharmacy expenses and, in April 2009, grouped them with room and board. Also, several insurance claims were disallowed because they were lumped under the skilled nursing facility.

Ms. Flemmer contends that Mr. Owens angrily confronted her in January 2010 and demanded that Ms. Flemmer pay $45,000 to Regency. She felt threatened by his demeanor and actions. Ms. Flemmer paid the $45,000, although Regency had not been

able or willing to explain her bill. She overheard a staff member tell Mr. Owens that Ms. Flemmer had overpaid, but that this comment made Mr. Owens angry. Due to the billing dispute, Ms. Flemmer contends that she suffered tremendous stress during and after her stay at Regency. She states that the stress caused heart palpitations and irregular heart rhythms.

At the hearing, the trial court granted Regency's summary judgment motion and its counterclaim. The court stated, "I think this is an accounting nightmare apparently, but I don't think the elements necessary to prove the various causes of action have been shown." Report of Proceedings at 12. The trial court also denied Ms. Flemmer's motion to amend her complaint. The court stated that the motion was untimely because Ms. Flemmer sought to amend the complaint after having the benefit of the court looking at the summary judgment motion.

The trial court denied Ms. Flemmer's motion for reconsideration. The trial court entered a judgment in favor of Regency for $10,367.79, the amount alleged in the counterclaim. The court also granted attorney fees and costs to Regency.

ANALYSIS

*Breach of Contract Claim.* Summary judgment orders are reviewed de novo on appeal. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

Summary judgment is appropriately granted if the evidence presented shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Any doubt as to the existence of a genuine issue of material fact will be resolved against the movant. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). A material fact is one upon which the outcome of the case depends, in whole or in part. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993).

"A party may move for summary judgment by setting out its own version of the facts or by alleging that the nonmoving party failed to present sufficient evidence to support its case." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 350, 144 P.3d 276 (2006). "Once the moving party has met its burden, the burden shifts to the nonmoving party to present admissible evidence demonstrating the existence of a genuine issue of material fact." *Id.* at 351. "If the nonmoving party cannot meet that burden, summary judgment is appropriate." *Id.*

In Ms. Flemmer's breach of contract claim, she contends that Regency overbilled her by either charging too much for services, charging her and her insurance company for the same services, or failing to credit her insurance payments. She submits several bills and insurance statements to question whether the final accounting by Regency is accurate. Regency admits to inadvertent errors in Ms. Flemmer's account, but contends that the manual statement created by Mr. Krise corrected these mistakes and is a final and accurate reconciliation of Ms. Flemmer's account.

Genuine issues of material fact surround whether Regency accurately billed Ms. Flemmer according to the admission agreement. For instance, on the manual bill, Ms. Flemmer contends that her room and board charge for April 2009 came out to $375 per day rather than the agreed upon rate of $240 per day. Regency contends that this is because she was placed in a more expensive room at Regency that provided more care after she returned from a hospital stay. Regency admits that the record does not contain documents that would support this conclusion. Without the appropriate records, we cannot conclude that Ms. Flemmer was or was not appropriately billed. This billing discrepancy raises a genuine issue of material fact.

Another discrepancy can be found in the last two months of Ms. Flemmer's stay. Regency contends that Ms. Flemmer did not qualify for Medicare, so it had no obligation

11

to bill anyone but her per the admission agreement. However, in her motion for reconsideration, Ms. Flemmer produced an explanation of benefits from Medicare that covered her during her last two months of residency at Regency. Despite the coverage, Regency privately billed Ms. Flemmer for room and board for these two months. This discrepancy still creates a genuine issue of material fact as to whether Regency was obligated to bill Medicare for prior months or whether Regency billed both Medicare and Ms. Flemmer for the charges.

Regency did not violate the admission agreement by keeping two sets of accounting records: one for payment from insurance and one for private payment for the resident. However, the failure to fully explain the amounts of the coinsurance payment on Ms. Flemmer's private payment leads to questions about billing. Simply listing the amount due as "Co-Insurance" without itemizing specific costs being billed and the amount covered by insurance raises billing questions that must be addressed through additional evidence or at trial, if no other evidence exists.

A general charge for coinsurance is not enough to overcome summary judgment on whether Regency overbilled Ms. Flemmer or failed to credit her for insurance payments. The record on appeal does not establish the individual charges for the coinsurance billing. Interpreting the affidavits and billing statements in the light most favorable to Ms.

Flemmer, we find a genuine issue of material fact exists. Based on our de novo review of the record submitted on appeal, we conclude that genuine issues of material fact exist as to whether Regency breached the admission agreement by billing more than the agreement allowed.

*Breach of Implied Covenant of Good Faith and Fair Dealing.* "There is an implied duty of good faith and fair dealing in every contract [that] obligates the parties to cooperate with one another so that each may obtain the full benefit of performance [under the contract]." *Frank Coluccio Constr. Co. v. King County*, 136 Wn. App. 751, 764, 150 P.3d 1147 (2007). The duty of good faith and fair dealing requires only that the parties perform in good faith the obligations imposed by their agreement. *Barrett v. Weyehaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 635 n.6, 700 P.2d 338 (1985).

Ms. Flemmer fails to raise a genuine issue of material fact as to whether Regency violated a duty of good faith and fair dealing. There is no evidence in the record that Regency did not act in good faith in preparing and billing Ms. Flemmer. Regency billed Ms. Flemmer on time under the agreement. While it admits that it made inadvertent accounting errors, there is no evidence that the errors were made in bad faith. While Ms. Flemmer contends that Regency would not address her complaints and that Regency's director acted unreasonably when questioned about the bill, she provides no other

13

evidence to support this claim other than her self-serving declaration. The record does not raise a genuine issue of material fact as to whether Regency breached a duty of good faith and fair dealing. Summary judgment was appropriately granted as to this claim.

*Negligent Infliction of Emotional Distress.* To recover for negligent infliction of emotional distress, the plaintiff must prove the negligence elements of duty, breach, causation, and damages, as well as objective symptomatology. *Kloepfel v. Bokor*, 149 Wn.2d 192, 199, 66 P.3d 630 (2003). To satisfy the objective symptomatology requirement, "a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Hegel v. McMahon*, 136 Wn.2d 122, 135, 960 P.2d 424 (1998).

Ms. Flemmer contends that the trial court erred in dismissing her claim for negligent infliction of emotional distress. She maintains that Regency caused her stress through lack of reasonable billing explanations and ever-changing bill amounts.

Ms. Flemmer did produce medical evidence needed to establish the objective symptomatology requirement. The note from her doctor that she is experiencing stress from the legal action raises a genuine issue of material fact. As previously noted, any doubt as to the existence of a genuine issue of material fact is resolved against the movant, Regency. Thus, the trial court's dismissal of this claim was improper.

14

*CPA Claim.* Unfair methods of competition and unfair deceptive acts or practices in the conduct of a trade or commerce are unlawful. RCW 19.86.020.

> In a private action in which an unfair or deceptive act or practice is alleged under RCW 19.86.020, a claimant may establish that the act or practice is injurious to the public interest because it:
> (1) Violates a statute that incorporates this chapter;
> (2) Violates a statute that contains a specific legislative declaration of public interest impact; or
> (3)(a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons.

RCW 19.86.093.

Ms. Flemmer fails to produce evidence that would create a genuine issue of material fact as to whether Regency violated the CPA. First, she did not produce evidence of deceptive trade acts. There is no evidence in the record that the billing problems by Regency were deceptive. Also, she fails to present declarations of witnesses or other evidence to establish that others had the same billing issues with Regency or will have these problems. For instance, there are no affidavits from other residents. Summary judgment was appropriately granted on this issue.

*Reconsideration.* A trial court's denial of a motion for reconsideration is reviewed for a manifest abuse of discretion. *Lund v. Benham*, 109 Wn. App. 263, 266, 34 P.3d 902 (2001). Given our decision here, we need not address the motion for reconsideration.

15

No. 31270-4-III
*Flemmer v. Regency Pac., Inc.*


*Attorney Fees.* The admission agreement allows attorney fees for the prevailing party. Both parties prevailed on appeal. As such, neither party is entitled to attorney fees on appeal.

We reverse summary judgment on the breach of contract claim and the negligent infliction of emotional distress claim. We do so without prejudice to the appellant to permit refiling of her motion to amend. We affirm summary judgment on the remaining claims.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____          _____
Korsmo, C.J.                                              Siddoway, J.

16