FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2017 JUN 12 AM 9: 04

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

TRINA CORTESE, an individual, and )
TRINA CORTESE, as personal )
representative of the ESTATE )
OF TANNER TROSKO; RICHARD )
CORTESE and TRINA CORTESE, )
husband and wife, and their marital )
community, )
     )
     )
     Appellants, )
     )
     v.      )
     )
LUCAS WELLS, CORY WELLS, )
ROCHELLE WELLS, and the marital )
community of Cory and Rochelle Wells, )
CORY AND ROCHELLLE WELLS )
d/b/a TLC TOWING, an unincorporated )
business, and STATE FARM MUTUAL )
AUTOMOBILE INSURANCE )
COMPANY, )
     )
     Respondents. )
_____)

No. 76748-8-I

UNPUBLISHED OPINION

FILED: June 12, 2017

VERELLEN, C.J. — Trina Cortese's son, Tanner Trosko, died from mechanical asphyxiation after a pickup truck he was a passenger in overturned. Trina sued State Farm Mutual Automobile Insurance Company, her underinsured motorist insurer, and others on several theories, including negligent infliction of emotional distress. The trial court dismissed Trina's negligent infliction of emotional distress claim on summary judgment. Trina appeals, arguing she has a viable negligent infliction of

emotional distress claim even though she learned of her son's accident and that he died before she drove to the accident scene. But negligent infliction of emotional distress "is a limited tort theory of recovery."[1] The "'kind of shock the tort requires is the result of the immediate aftermath of an accident.' It is not the emotional distress one experiences at the scene after already learning of the accident before coming to the scene."[2] Accordingly, we affirm.

## FACTS

On September 4, 2013, Lucas Wells lost control of his 1960 Ford pickup truck while driving around a curve. The truck overturned and slid to a stop. Seventeen-year-old Tanner Trosko, who was a passenger in the truck, died from mechanical asphyxiation due to his position in the truck when it came to rest.

Trosko's parents, Trina and Richard Cortese lived near the accident scene and were outside doing yard work when the accident occurred.[3] Trina discussed the sequence of events leading up to her arrival at the scene in her deposition:

> And, and then I heard the sirens, you know, and they didn't stop. They just kept on going. And I said, oh, my God, you know, somebody really got hurt. But, but I knew that my son went the other way. He went I-5. He was going to L.A. Fitness.
>
> So, you know, phew, he was okay. Because this was like behind the house when the sirens just kept going on and on. And, and so a little bit later one of [Trosko's] friends comes to the door and the dog's barking. And I said, "Tanner's not here."
>
> And he goes, "No. Have you heard from him?" I said, "He went to LA Fitness." You know, I don't, I don't like to call or anything when,

---

[1] Colbert v. Moomba Sports, Inc., 163 Wn.2d 43, 60, 176 P.3d 497 (2008).

[2] Id. (quoting Hegel v. McMahon, 136 Wn.2d 122, 130, 960 P.2d 424 (1998)).

[3] For clarity, the Corteses are referred to by their first names.

2

you know, I know if he's driving. And he told me, "No. Call him. There's been an accident." And so I tried to call him and there was no answer.

. . . .

And pretty soon [Wells's] dad comes with somebody and they come in the house and they tell me that [Trosko]'s been in an accident and he didn't survive. And I said, "Oh, my God. I just saw him. He was just here. Oh, my God, no." And, I had to go to him.

. . . .

So my husband drove us to [the accident scene].[4]

When the Corteses arrived roughly 20 minutes after the accident, the accident scene was surrounded by emergency vehicles and blocked off, denying the Corteses entry. Trosko had been removed from the truck and was laying on the other side of the road covered with a sheet. Trina testified she was able to see her son's feet under the sheet.

A psychiatrist diagnosed Trina with posttraumatic stress disorder as a result of her son's accident. Trina has not returned to work as a respiratory therapist since the accident.

On June 20, 2014, Trina, both individually and as personal representative of her son's estate, sued Wells and his parents on several theories, including negligent infliction of emotional distress. At the time of the accident, the Corteses had an automobile insurance policy in effect with State Farm Mutual Automobile Insurance Company. The policy included underinsured motorist coverage. State Farm

---

[4] CP at 67-69.

intervened in the suit and Trina filed an amended complaint on December 28, 2015, adding State Farm as a defendant.

On June 21, 2016, State Farm moved for summary judgment seeking to dismiss Trina's claim for negligent infliction of emotional distress—Trina's only remaining claim against State Farm. State Farm argued Trina had no claim of negligent infliction of emotional distress because she was informed that her son did not survive the accident before she arrived at the scene.

On August 26, 2016, the trial court granted summary judgment dismissing Trina's claim for negligence infliction of emotional distress. Since there were no further claims pending against State Farm, the judgment granting State Farm's motion for summary judgment dismissed State Farm as a party defendant.

Trina appeals.

## ANALYSIS

Trina contends the trial court erred in dismissing her negligent infliction of emotional distress claim on summary judgment. We disagree.

We review a summary judgment order de novo, engaging in the same inquiry as the trial court.[5] We view the facts and all reasonable inferences in the light most favorable to the nonmoving party.[6] Summary judgment is proper if there are no

---

[5] Beaupre v. Pierce County, 161 Wn.2d 568, 571, 166 P.3d 712 (2007).

[6] Fulton v. Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

genuine issues of material fact.[7] "A material fact is one that affects the outcome of the litigation."[8]

"The tort of negligent infliction of emotional distress is a limited, judicially created cause of action that allows a family member to a recovery for 'foreseeable' intangible injuries caused by viewing a physically injured loved one shortly after a traumatic accident."[9] In Washington, a cause of action for negligent infliction of emotional distress is recognized "'where a plaintiff witnesses the victim's injuries at the scene of an accident shortly after it occurs and before there is a material change in the attendant circumstances.'"[10]

> A plaintiff cannot recover if he or she did not witness the accident and did not arrive shortly thereafter, meaning that he or she did not see the accident or the horrendous attendant circumstances such as bleeding or other symptoms of injury, the victim's cries of pain, and, in some cases, the victim's dying words, all of which would constitute a continuation of the event. *Emotional distress from such circumstances is not the same as the emotional distress that . . . a person suffers after learning of the suffering of the victim from others who were present, but does not personally see the injuries or the aftermath of the accident before there is a material change.* There must be actual sensory experience of the pain and suffering of the victim—personal experience of the horror.[11]

In Hegel v. McMahon, our Supreme Court reviewed consolidated cases involving the issue of negligent infliction of emotional distress.[12] In the first case,

---

[7] CR 56(c); Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013).

[8] Janaszak v. State, 173 Wn. App. 703, 711, 297 P.3d 273 (2013).

[9] Colbert, 163 Wn.2d at 49 (citing Hegel, 136 Wn.2d 125-26; Gain v. Carroll Mill Co., 114 Wn.2d 254, 261, 787 P.2d 553 (1990)).

[10] Id. at 55 (quoting Hegel, 136 Wn.2d at 132) .

[11] Id. at 55-56 (emphasis added).

[12] 136 Wn.2d 122, 960 P.2d 424 (1998).

Dale Hegel was struck by a car and knocked into a ditch by the side of the road severely injured.[13] His relatives, the plaintiffs, discovered him when they drove along the same road shortly after the accident.[14] In the second case, the victim was killed when his motorcycle collided with a school bus.[15] His father, the plaintiff, happened on the scene within 10 minutes, before emergency crews arrived.[16] He saw his son on the ground, still conscious, but with his leg cut off and another severe injury leading to his death soon afterward.[17] The Washington Supreme Court concluded that it was improper for the lower courts to dismiss the plaintiffs' claims for negligent infliction of emotional distress.[18] The court stated that the plaintiffs in both cases were present at the scene and may have witnessed their family members' suffering before there was a substantial change in the victim's condition or location.[19]

In Colbert v. Moomba Sports, Inc., Jay Colbert and his wife were awakened by a 3:00 a.m. telephone phone call from their daughter's boyfriend.[20] The boyfriend told them their daughter had disappeared from the back of a boat at a nearby lake and a search was taking place for her.[21] Colbert drove to the lake, which was about

---

[13] Id. at 124-25.
[14] Id.
[15] Id. at 125.
[16] Id.
[17] Id.
[18] Id. at 132.
[19] Id.
[20] 163 Wn.2d 43, 46, 176 P.3d 497 (2008).
[21] Id.

five minutes away.[22] When he arrived, police cars, ambulances, and the fire department were at the scene.[23] A few hours later, rescuers found Colbert's daughter's body.[24] From about 100 yards away, Colbert could see his daughter's body being pulled onto the rescue boat.[25] The Washington Supreme Court affirmed the Court of Appeals decision in holding that Colbert was not a foreseeable plaintiff as a matter of law.[26] The Supreme Court explained that when Colbert arrived, "the accident had already occurred—he did not observe his daughter's suffering or her condition while she was drowning."[27] The court also explained that it is appropriate to consider whether a plaintiff arrives on the scene of an accident unwittingly when determining whether a plaintiff can bring a negligent infliction of emotional distress claim.[28] The court accepted the reasoning in a Pennsylvania decision, Mazzagatti v. Everingham, regarding an unwitting plaintiff:

> "[W]here the close relative is not present at the scene of the accident, *but instead learns of the accident from a third party, the close relative's prior knowledge of the injury to the victim serves as a buffer against the full impact of observing the accident scene.* By contrast, the relative who contemporaneously observes the tortious conduct has no time span in which to brace his or her emotional system."[29]

---

[22] Id.

[23] Id.

[24] Id.

[25] Id.

[26] Id. at 58.

[27] Id. at 57.

[28] Id. at 60.

[29] Id. at 59-60 (emphasis added) (quoting Mazzagatti v. Everingham, 512 Pa. 266, 279-80, 516 A.2d 672 (Pa. 1986)).

In this case, Trina was informed of her son's accident by a third party, and she arrived at the scene of the accident roughly 20 minutes after the accident had occurred. Emergency responders were already there and had the area blocked off. The first time Trina saw her son, he was laying on the other side of the road covered by a sheet. She could see the bottom of one of his feet and noticed his leg was bent under the sheet. Trina "did not see any blood because they wouldn't let me get close enough."[30] Under these circumstances, there was a "material change" in the scene because, unlike Hegel where the plaintiffs happened upon the scene of the accident, Trosko had already been removed from the truck where he died and was laying on the road when Trina first saw him. Additionally, similar to Colbert, emergency crews had already responded to the scene and Trina did not witness the "horrendous attendant circumstances such as bleeding or other symptoms of injury, the victim's cries of pain, [or] the victim's dying words."[31] As difficult as it would be for any parent to see their deceased child, she did not have an "actual sensory experience of the pain and suffering of" her son because he died before she arrived.[32] Finally, Trina had prior knowledge that her son did not survive the accident.[33] As the Supreme Court observed in Colbert, "'[t]he kind of shock the tort requires is the result of the

---

[30] CP at 72.

[31] Colbert, 163 Wn.2d at 55.

[32] Id. at 56.

[33] CP at 68 ("And pretty soon [Wells's] dad comes with somebody and they come in the house and they tell me that Tanner's been in an accident and he didn't survive.").

immediate aftermath of an accident.' It is not the emotional distress one experiences at the scene after already learning of the accident before coming to the scene."[34]

Accordingly, the trial court did not err in concluding that Trina was not a foreseeable plaintiff as a matter of law.[35]

Affirmed.

WE CONCUR:

_____

_____

_____
Becker, J.

---

[34] Colbert, 163 Wn.2d at 60 (quoting Hegel, 136 Wn.2d at 130).

[35] Trina's argument that a genuine issue of material fact exists whether she arrived "shortly thereafter" the accident fails. As explained above, the arriving "shortly thereafter" element of negligent infliction of emotional distress is not merely a temporal limit—it is a limit on the type of emotional trauma that is recoverable. See Colbert, 163 Wn.2d at 60; Hegel, 136 Wn.2d at 130.